[No. 8969.    Department Two.    December 12, 1910.]

C. F. GRAFF, *Appellant*, v. THE CITY OF TACOMA *et al.*,
*Respondents.*[1]

APPEAL — DISMISSAL — CESSATION OF CONTROVERSY. Upon appeal from the dismissal of an action to enjoin a city from letting a contract for a city bridge, there is no cessation of the controversy warranting a dismissal of the appeal from the fact that the city has since let the contract to enjoin which the action was commenced.

MUNICIPAL CORPORATIONS—CONTRACTS—BRIDGES—COMMISSIONER OF PUBLIC WORKS—POWERS—AWARDS—BIDS. Under Tacoma city charter, §§ 129, 130, making the commissioner of public works subject to the direction and control of the city council, giving him power to supervise the construction and repair of bridges, but not to contract therefor, and providing that whenever the city council shall so provide by resolution or ordinance, before any contract shall be awarded it shall be submitted to them for approval, an award by the commissioner of a bridge contract upon competitive bids is without force, where the city council by ordinance thereafter, without taking any

[1]Reported in 112 Pac. 250.

notice of the commissioner's action, awarded the contract to another bidder; and where § 163 of the charter providing for the awarding of contracts by the commissioner refers only to street work on local assessments and does not apply to bridges built at the expense of the general fund.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered April 18, 1910, in favor of the defendants, dismissing an action to enjoin the execution and awarding of a contract for a public improvement. Affirmed.

*Roberts, Battle, Hulbert & Tennant,* and *C. J. France,* for appellant.

*T. L. Stiles, F. R. Baker,* and *Frank M. Carnahan,* for respondents.

CROW, J.—On January 20, 1908, the council of the city of Tacoma, by resolution, directed the commissioner of public works to have preliminary plans, specifications, and estimates prepared for the construction of certain bridges. Being prepared, they showed an estimated cost of $300,000. On March 24, 1909, an ordinance was passed, in pursuance of which a special election was held, authorizing the issuance and sale of $300,000 of bonds to construct the proposed bridges. On January 10, 1910, the commissioner of public works advertised for bids. On February 14, 1910, he received nine sealed bids for one of the bridges, one bid from the Western Bridge Company for $44,100, and one from the plaintiff, C. F. Graff, for $47,495, all others being for larger sums. After consultation with the city attorney, the commissioner concluded the Western Bridge Company bid was defective; that plaintiff had made the lowest regular bid, approved the latter, and endorsed an acceptance thereon. His clerk noted an award to plaintiff on his office record, and posted a five-days' notice thereof. No further action was taken by the commissioner, nor was any contract executed with the plaintiff. Thereafter, and on March 2, 1910, the city council passed an ordinance whereby it declared the bid

of the Western Bridge Company to be the lowest, accepted the same, awarded a contract thereon, and directed the commissioner of public works to execute the same. Thereupon the plaintiff commenced this action to enjoin the city, its mayor, councilmen, and commissioner of public works from contracting with the Western Bridge Company, and to compel the execution of a contract with him. From a final judgment dismissing the action, the plaintiff has appealed.

The respondents have moved to dismiss the appeal because the controversy has ceased. In support of their motion they have shown that, since the entry of final judgment, the city has contracted with the Western Bridge Company, and that the bridge has been substantially constructed. On the authority of *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226, this motion must be denied. We there said:

"It is true that when, pending an appeal from the judgment of the lower court, and without any fault on the part of the respondent, an event occurs which renders it impossible to enter a judgment in favor of the appellant which will give any effectual relief, the court will not proceed to a formal judgment but will dismiss the appeal; and it is held, also, that the same result will follow if the intervening event is owing to some voluntary act of the appellant. But no such result follows merely because the respondent has changed the status of the subject-matter in litigation. So in this case, if it appears that the contract entered into was subject to be enjoined because in violation of the statutes, the court may now inquire into the subsequent acts of the respondents and compel them to undo what they have wrongfully done, in so far as it is capable of undoing, and to answer in damages for anything that cannot be undone."

Appellant contends that, after his bid had been approved and an award had been made thereon by the commissioner of public works, he was entitled to his contract. Section 129 of the city charter provides that:

"Subject to the direction and control of the city council and the law and ordinances of the city, the commissioner shall have charge of and superintend all public works of the city,

and shall make such purchases of materials and supplies as may be authorized by ordinance or the city council; but he shall make no purchase of material or supplies of an amount or value in excess of five hundred dollars, except upon a written contract and after advertising for bids for furnishing such materials or supplies in the manner provided in sections 160, 161, and 162 of this charter."

Section 130 provides:

"He shall have special charge and control, subject to such ordinances as the city council may adopt, . . . of streets . . . roads, bridges, etc. . . . and of the improvement and repair thereof . . . and of all public works and improvements that may hereafter be made by the city . . ."

Section 163, in part provides as follows:

"The commissioner of public works shall compare the bids with the record made by the clerk, and shall thereupon at said time, or at such other time, not exceeding ten days thereafter . . . award the contract to the lowest bidder, except as otherwise herein provided. Notice of such award shall forthwith be posted for five days by the clerk of the commissioner of public works in some conspicuous place in his office. He may reject any and all bids, and must reject the bid of any party who has been delinquent or unfaithful in any former contracts with the city, and all bids other than the lowest regular bid, and on accepting said lowest bid shall thereupon return to the proper parties the checks corresponding to the bids so rejected. If all the bids are rejected . . . he shall return all the checks to the proper parties and again invite sealed proposals, as in the first instance."

Appellant contends that, under these sections, the commissioner of public works had authority to award the contract to him; that the commissioner did so, and that he is now entitled to the benefits of his bid, award, and contract. It will be observed from a reading of §§ 129 and 130, *supra*, that the commissioner in the performance of his duties acts at all times subject to the direction and control of the council. These particular sections do not authorize him to contract for the construction of bridges, and thereby bind the city.

They confer upon him the power to supervise their construction and repair. To contract for the construction of a bridge he should first be authorized by the council. No such specially delegated authority as to the bridge here involved has been shown. He had only been authorized to prepare plans, specifications, and estimates, and advertise for bids. Section 163 above quoted, upon which appellant especially relies, is a part of article 12 of the charter relating only to street and kindred improvements which are to be made at the expense of benefited property specially assessed therefor. No such improvement is here involved. The cost of the bridge in question is to be paid from the proceeds of the sale of the bonds above mentioned, which bonds are an obligation of the entire city. We must in this action look to §§ 129 and 130, *supra*, for the authority of the commissioner of public works. We find that in the exercise of powers conferred by these sections, he is at all times subject to the direction and control of the council. There is no evidence that the council has at any time authorized the commissioner to enter into a contract, or to take any steps further than to prepare plans, specifications, and estimates, and advertise for bids. The latter part of § 129 consists of the following additional words:

"Whenever the city council shall so require by ordinance or resolution, before any contract shall be entered into upon any award under this charter, the same shall be submitted to the city council for its approval and shall not take effect until so approved."

The argument of the appellant is made upon the theory that all conditions precedent for awarding the contract to him had been fully performed by the commissioner, who he contends was vested with full authority. He insists that when the award had been made to him by the commissioner, the city council, if they desired to thereafter pass upon such award, could only do so by passing an ordinance or resolution directing the commissioner to submit the award and

contract to them for approval, but that no such resolution or ordinance was passed. Appellant concedes that, if such an ordinance or resolution had been passed, and the council had thereafter rejected the award made to him, he would not be entitled to any equitable relief. The latter portion of § 129, *supra*, discloses a manifest intention to vest the council with unlimited control over the actions of the commissioner in the matter of awarding contracts such as the one here involved. The only purpose of any resolution, directing him to submit proposed contracts to them, would be to obtain their final consideration. When that purpose had actually been accomplished, either by resolution or by the enactment of the ordinance of which appellant now complains, declaring the bridge company bid to be the lowest, and awarding it the contract, it would certainly be an idle and unnecessary proceeding to enact another resolution or ordinance requiring the commissioner to submit the bids and any proposed contract to them for further consideration. In view of the fact that the council, by the enactment of the ordinance, did take charge of the entire matter, and did determine the award to be made, and the contract to be executed, and in view of the further fact that the commissioner was at all times compelled to proceed under their supervision and control, we fail to see how the appellant is entitled to any relief in this action.

The judgment is affirmed.

RUDKIN, C. J., DUNBAR, MORRIS, and CHADWICK, JJ., concur.