# Postal Tel.-Cable Co. *v.* City of Montgomery.

## *Injunction.*

Decided June 17, 1915.  69 South. 428.

1. *Actions; Moot Case.*—When a case has become moot, it will not be determined by the court merely to determine who is liable for the cost.

2. *Same.*—A moot case is one which seeks to determine an abstract question not resting upon facts or rights then existing.

3. *Appeal and Error; Review; Moot Case.*—Where a telegraph company was enjoined from carrying on intrastate business during the year 1914, because it had not paid the city license fee, and the city had given the statutory bond to secure the injunction, and the appeal was not submitted until after the license year, the case will not be deemed moot in such a sense as to preclude a review of the question by the court as a dismissal of the appeal would result in leaving the question of whether the injunction was wrongfully issued undetermined., and would not give the telegraph company any rights under the bond; and this is true although it may be maintained that the city as an arm of the state was not required to give bond.

4. *Licenses; Failure to Obtain; Injunction.*—Where it appeared that the manager of the telegraph company had been convicted for a failure to pay the license of the city as required, and it did not appear that an action at law to recover license would prove ineffective, a bill to enjoin a telegraph company from carrying on intrastate business from that office until the license was paid, is without equity, and should be dismissed.

(Sayre, J., dissents in part.)

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Bill by the City of Montgomery against the Postal Telegraph-Cable Company. From a decree for complainant, defendant appeals. Reversed, injunction dissolved, and cause remanded.

The City of Montgomery filed this bill against the Postal Telegraph-Cable Company, alleging in substance as follows: That the respondent is engaged in business in Montgomery; that the city commission of

Montgomery on December 2, 1913, adopted an ordinance prescribing the amount of license to be paid for certain businesses, vocations, etc., for the fiscal year beginning January 1, 1914, and ending December 31, 1914, of which ordinance section 188 had to deal with the business of telegraph companies, fixing their license tax, and confining same to intrastate business, excluding business done for the United States government; that subsequently, on July 21, 1914, said commission amended said section 188, which amendment is set up in paragraph 4 of the bill, but as to which we deem further reference unnecessary. Paragraph 5 of the bill sets forth section 985 of the City Code of Montgomery, which it is alleged is still in force and effect, and which section prescribes a penalty against any person, firm, or corporation who shall engage in any business, etc., for which a license is required by any ordinance of the city, without first obtaining such license, and fixes a punishment for each day such business is so carried on, and a fine to be imposed upon conviction. In the sixth paragraph it is alleged that at all times during the year 1914, and up to the time of filing the bill, on October 3, 1914, the respondent has been operating a telegraph office in this city, and has never paid any license to the city of Montgomery for the year 1914. It is further alleged that on June 23, 1914, the complainant caused the arrest of the manager of the respondent's business in the city of Montgomery for the unlawful act of doing business as aforesaid without having procured the license required, making for each day's business a separate and distinct charge; and it is further alleged that the said manager was tried before the city recorder on several of the said charges, and convicted, and that he has appealed from said convic-

tion to the city court of Montgomery, where each of the said appeals is still pending, and that notwithstanding the said arrest of the manager the respondent continues to do business in this city without a license. In the ninth paragraph complainant avers that it is without an adequate remedy at law, for the reason that notwithstanding the arrest and conviction of its manager the respondent continues to carry on its business, and that, if complainant elected to bring an action at law for the amount of the license due it, such action would offer no adequate relief from the continued violation of said ordinance, but that such violation would, in the belief of complainant, continue from day to day, notwithstanding any action at law which it might bring. The prayer of the bill is for a perpetual injunction against the respondent's maintaining and operating a telegraph office in the city of Montgomery without complying with the ordinance requiring the procurement of a license for such business. A temporary injunction was asked for, during the pendency of the suit. The application for a fiat was set down for hearing as authorized by section 4528 of the Code; and on December 11, 1914, the judge of the city court entered the order for a temporary injunction as prayed, "effective during the year 1914," upon condition of the complainant's entering into a bond in the sum of $500, conditioned as prescribed by law. The temporary injunction was issued in compliance with this order, and thereby the respondent company, its officers, agents, and employees, were enjoined from having, maintaining, or operating a telegraph office in the city of Montgomery for any other purpose than the doing business for the United States government, or interstate business, without compliance with the ordinances of said city relating

to such companies, which said writ of injunction was duly served on December 12th. From the order granting the temporary relief of injunction, the respondent prosecutes this appeal, and the cause was argued and submitted on January 4, 1915.

RUSHTON, WILLIAMS, & CRENSHAW, and MARTIN & MARTIN, for appellant.

EDWARD S. WATTS, for appellee.

### ON MOTION TO DISMISS APPEAL.

GARDNER, J.—(1) Counsel for appellee moved to dismiss the appeal, upon the ground that the same is prosecuted from an order granting a temporary writ of injunction which by its terms was effective only during the year 1914, and that as that time had expired prior to the submission of the cause, although not at the time the appeal was in fact taken, therefore the appeal presents only an abstract question for determination and is a moot case. In *Adams, v. Union Ry. Co.,* 21 R. I. I, 42 Atl. 515, 44 L. R. A. 273, cited also in 27 Cyc. 911, it is said: "A moot case is one which seeks to determine an abstract question, which does not rest upon existing facts or rights."

In *Agee v. Cate,* 180 Ala. 522, 61 South. 900, it was said by this court: "Nor is it customary to decide questions of importance, after their decision has become useless, merely to ascertain who is liable for the costs."

We are unable to agree that this appeal does not affect the existing rights, and that the question involved is only one of costs.

(2) The complainant in the court below sought and obtained an injunction against the respondent's trans-

acting intrastate business in the city of Montgomery, and the writ issued prohibited the transaction of any such business from December 12, 1914, to January 1, 1915. As a condition precedent to the issuance of the writ the court below required the complainant to enter into bond payable to the respondent as required by law, and which condition reads as follows: "Now, if the said city of Montgomery and its sureties, or either of them, shall pay or cause to be paid all damages and costs which any person may sustain by the suing out of said temporary injunction or restraining order, if the same is dissolved, then this obligation to be void; otherwise, to remain in full force and effect."

The right of the city to thus prevent the respondent from engaging in intrastate business for this period of time is clearly a question which the respondent had a right to have determined by the court of last resort. The injunction bond was required for its protection against damages which it might sustain by the suing out of the temporary writ of injunction, should same be dissolved. The condition of liability upon the bond is the dissolution of the injunction. A dismissal of this appeal would result in leaving the question of whether or not the issuance of the injunction was wrongful, and the consequent question as to whether or not the injunction should be dissolved, undetermined, and therefore leave without adjudication the question touching the very condition of the bond, and, of consequence, that of liability thereon. To hold that merely because the year 1914 had passed before this cause was submitted would deprive this respondent of the right to have adjudicated to its final conclusion the right of the city to close its place of business for intrastate business would, in effect, be to close the door of the

court to this appellant to have determined the question as to the liability of the city upon the said injunction bond. This latter is clearly an existing right, which the respondent is entitled to have adjudicated in the courts of last resort.

The suggestion of counsel that the city (it being a part of the state government) should not have been required to make the bond and the argument that therefore the city would not be liable upon said bond, is beside the mark and premature. These are matters with which we are not concerned, for the question upon the motion is the right of the respondent to have the matter of liability tested and adjudicated in a due and orderly manner should it be held that the injunction was improperly granted. The dismissal of an appeal for the reason urged (that it is a moot question), and where only the question of costs is involved, is a matter which must largely rest in the discretion of the court, and while, as stated in *Agee v. Cate, supra,* it is not customary to decide questions of importance after their decision has become useless, merely to ascertain who is liable for the costs, yet in our case of *Comer v. Bankhead,* 70 Ala. 136, the court did not dismiss the appeal, but determined the question and reversed the cause, at the cost of the appellee. Nor is our conclusion in conflict with what was said in the case of *County of Montgomery v. Montgomery Traction Co.,* 140 Ala. 458, 37 South. 208. There the injunction issued was merely directed against the board of revenue of Montgomery county to prevent its interference with the railway tracks of the complainant, or, in other words, to hold the property of the complainant in statu quo pending the determination of the issue by the court. Indeed, the situation was the reverse of what we have here,

and the opinion stated that it was apparent there was nothing to be accomplished by a decree on the merits of the issue, and no reference was made therein to the injunction bond or any liability thereon. Quite a different situation is presented when conditions are reversed, and when the business of the respondent has been materially interfered with and property rights are involved.

We are of the opinion that this record does not present what is called a moot case, but that in fact existing rights of the parties are involved which it is the duty of this court to determine. The motion to dismiss the appeal will therefore be denied.

### ON THE MERITS.

(3) The bill, in substance, merely seeks injunctive relief against the violation by respondent of the ordinance of the city relating to the payment of a revenue license. It is not alleged that the respondent is insolvent, nor indeed is it disclosed why the relief at law is not adequate and complete. That the jurisdiction of a court of equity is exclusively civil is well established in this state, and a few brief quotations from our own authorities will suffice to demonstrate that the bill is without equity. In *Moses v. Mayor, etc., of Mobile,* 52 Ala. 198, this court, speaking through Chief Justice Brickell, said: "At one time the Court of Chancery in England, exercised a jurisdiction partaking of a criminal character, but it was not without objection and protest from the Commons and the common-law courts. It was excused, rather than justified, because of the inability of other tribunals to maintain internal peace and order, and because it was exercised for the defense of the poor and helpless. It passed away, when

the necessity for its exercise ceased, and the common-law tribunals were restored to power sufficient for the repression of violence and wrong. 1 Spence, Eq. Jur. 341, c. 4. Since, the jurisdiction of a court of equity has been purely and exclusively civil."

And in *Brown v. Mayor, etc., of Birmingham,* 140 Ala. 590, 37 South. 173, is the following language: "We discover nothing in the case made by the bill to take it out of the well-settled general doctrine that the juris-diction of courts of equity is purely and exclusively civil; that, of consequence, they are without power to enjoin the commission of threatened crimes on the one hand, and to enjoin threatened prosecution for the commission of alleged crimes on the other; that viola-tions of state laws and violations of penal municipal ordinances, and prosecutions for both, stand upon the same footing in this connection; and that it is wholly immaterial that the statute or ordinance, for an al-leged violation of which prosecution is threatened, is absolutely void."

The case of *Pike County Dispensary v. Mayor, etc., of Brundidge,* 130 Ala. 193, 30 South. 451, is an au-thority directly in point, and is conclusive against the equity of this bill. The facts of the case and purpose of the bill are to be easily ascertained by reference thereto. The town of Brundidge sought to enjoin the operation of a dispensary for the sale of liquors within its corporate limits, not only upon the ground that the dispensary corporation had not procured a county license therefor, but upon the ground that a local pro-hibition law was in force, covering the place where the dispensary was proposed to be operated, and which would, therefore, be in violation of said local prohibi-tion law and constitute a public nuisance. The follow-

ing quotation from the opinion is sufficient for the purposes of this case: "If it be conceded that the Pike County Dispensary has no right to engage in the liquor business without paying the county license tax, and may not legally engage in such business in Brundidge under any circumstances because of the local prohibition statute referred to, the present bill is yet without equity, since chancery courts have no jurisdiction, to enjoin the commission of offenses against the criminal laws of the state; and the proposed acts of the respondent, however illegal they may be, would not constitute a nuisance."

Numerous authorities cited by counsel for appellee have been examined, but the diligence of learned counsel has not been rewarded with "a case in point," and we find among those to which our attention has been directed none which militates against the conclusion here reached. We are referred, among our cases, to *Bryan v. Mayor, etc., of Birmingham,* 154 Ala. 447, 45 South. 922, 129 Am. St. Rep. 63; but that case supports, rather than conflicts with, the conclusion reached in this case. At the outset of the opinion it is recognized that: "The jurisdiction of equity is purely and exclusively civil, and such courts are without power to enjoin or restrain threatened * * * prosecutions under municipal ordinances as well as state laws * * * Applying this rule, the courts should not lose sight of the fact that a court of equity can and should interfere by injunction to restrain any act or proceeding whether connected with crime, or not, which tends to the destruction or impairment of property or property rights."

It is thus seen that case is in harmony with our other decisions, and that what was really involved therein was the right of injunctive relief against the destruc-

tion or impairment of property rights. This was also the principle involved in the case of *Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 115, 4 South. 106, 5 Am. St. Rep. 342, which involved the invasion of a vested franchise right. The case of *State v. Mobile*, 5 Port. 279, 30 Am. Dec. 564, also cited by counsel for appellee, involved the obstruction of a public highway in the ctiy of Mobile, and clearly has no bearing on the instant case.

The general rule, as stated in the above authorities, and which appears to be well-nigh universally recognized, seems to be conceded as correct by counsel for appellee; but the insistence is made that the continuation of the business of the respondent without payment of the city license is a nuisance, and jurisdiction is sought to be rested upon this theory. As above shown, the authorities from our own jurisdiction will lend no color whatever to this argument, nor, indeed, does it find support in any of the cases cited from other jurisdictions. That of *Mugler v. Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, involved the question of the Kansas liquor law, the violation of which was made a nuisance by the statute and its abatement as such provided for. Somewhat similiar is the case of *Carleton v. Rugg*, 149 Mass. 550, 22 N. E. 55, 5 L. R. A. 193, 14 Am. St. Rep. 446, which involved a statute giving jurisdiction in equity to abate by injunction as a common nuisance any place used for the sale of intoxicating liquors. The case of *State v. Canty*, 207 Mo. 439, 105 S. W. 1078, 15 L. R. A. (N. S.) 123 Am. St. Rep. 393, 13 Ann. Cas. 787, was one in which the state sought injunctive relief against a form of entertainment, such as "bull-fighting," and where it was alleged that it was an offense against public order, common.

good, and public decency, and tended to corrupt the morals of the people and to disturb the peace. The case of *Columbian Athletic Club v. State*, 143 Ind. 98, 40 N. E. 914, 28 L. R. A. 727, 52 Am. St. Rep. 407, was of a somewhat similiar character, involving the question of prize fighting. That of *Attorney General v. Railroad Company*, 35 Wis. 435, involved a question of railroad rates. *State ex rel. v. Crawford*, 28 Kan. 726, 42 Am. Rep. 182, involved a statute of the state of Kansas pronouncing saloons in which liquors are sold to be nuisances and providing for their abatement. *Kansas v. Lindsay*, 85 Kan. 79, 116 Pac. 207, 35 L. R. A. (N. S.) 810, involved the right to maintain a hospital for the insane for compensation, without a license; the law providing that license should be issued only upon a showing of plans and facilities such as the board deemed adequate and suitable for such an important undertaking. The bill in that case also charged that insane patients in such asylum shrieked, made outcries, exposed their persons, and escaped or attempted to escape, and that defendants, in persistently violating the laws of the state in keeping the asylum, inflicted an injury upon the public and created a common nuisance.

A review of the authorities to which we have here referred sufficiently demonstrates that they are without application in the case at bar and lend no support to the contention that this case presents an exception to the general rule. The rule is recognized by Mr. Pomeroy (5 Eq. Jur. § 476) that: "A Court of equity is in no sense a court of criminal jurisdiction. Its primary province is the protection of property rights."

In section 478, speaking to the question of nuisances and of violations of city ordinances, he says: "But the

mere violation of the ordinance is no ground for relief, unless the acts themselves actually constitute a nuisance."

Here the bill seeks to enjoin the respondent from conducting its intrastate business because of its failure to procure the revenue license required by the city. The business conducted by the respondent is recognized as not only entirely legitimate and in no manner injurious to the commercial world. Nothing appears in the bill to show why the relief sought at law for the recovery of the amount of the revenue license is not an adequate remedy; and the bill shows that the manager of the respondent corporation has been prose- . cuted for a violation of the ordinance, and convicted in the rocorder's court, and that his case is now pending on appeal in the city court. Further discussion, however, we deem unnecessary. We are clearly convinced that the bill is wholly wanting in equity. The only decree, rendered in the cause, from which this appeal is prosecuted, is that granting the temporary injunction as prayed for in the bill; the demurrers on file not having been passed upon by the judge of the city court. The judgment here rendered, therefore, can only relate to this order, and the cause will be remanded to the city court, for disposition there in accordance with the views here expressed.

Our conclusion is, therefore, that there was error in ordering the temporary injunction to issue in this cause, because of want of equity in the bill. A decree will be here entered, reversing the order to that effect in the court below, and dissolving the temporary injunction; and the cause will be remanded for further proceedings in that court in conformity to this opinion.

Reversed, rendered, and remanded. All the Justices concur, except SAYRE, J., who dissents in part, as he

entertains the view that the record presents a moot case, and that therefore the motion to dismiss the appeal should prevail.