199 So. 892

## WILLIS v. BUCHMAN.

### 3 Div. 319.

Supreme Court of Alabama.

June 27, 1940.

Rehearing Denied Oct. 17, 1940.

Further Rehearing Denied Jan. 16, 1941.

Ball & Ball, of Montgomery, for petitioner.

Walter J. Knabe, of Montgomery (Douglas Arant, B. A. Monaghan, and Bradley, Baldwin, All & White, all of Birmingham, of counsel), opposed.

J. J. Donohue, of Louisville, Ky., and J. W. Patton, of Montgomery, for Louisville & N. R. Co., amicus curiae.

Dumas & Patterson, of Birmingham, for Alabama State Federation of Labor, amicus curiae.

Meader, Jones & Murray, of Montgomery, for Junior Chamber of Commerce, amicus curiae.

PER CURIAM.

The holdings of this court and of the Court of Appeals are to the effect that appeals may be dismissed where the questions for decision have become moot. Alabama Power Co. v. City of Sheffield, 232 Ala. 53, 166 So. 797; Todd v. Moore, 205 Ala. 451, 88 So. 447; Caldwell v. Loveless, 17 Ala.App. 381, 85 So. 307.

In this case there was an appeal under the statute and in Agricola Furnace Company v. Smith, Ala.Sup., 195 So. 743,[1] there was petition for certiorari, and this decision does not determine the question presented in the Court of Appeals on the motion to dismiss the appeal and sought to be reviewed here by certiorari.

It results from the foregoing that the petition for certiorari should be and is granted. The judgment of the Court of Appeals is reversed and the cause is remanded to that court for disposition in accordance with the foregoing opinion. The case having become moot by the action of appellee, it should be dismissed by the Court of Appeals at the cost of appellee.

All the Justices concur except LIVINGSTON, J., not sitting.

[1] 239 Ala. 438.

## On Rehearing.

**PER CURIAM.**

 Appellee had recovered a judgment at law against appellant for a sum of money. The defense was usury, and defendant appealed to the Court of Appeals. 199 So. 886. Thereafter, the appellee, plaintiff in the judgment, entered a cancellation and discharge of it on the record of the judgment, and made a motion in the Court of Appeals to dismiss the appeal. That court denied the motion, and on certiorari to this court, the judgment so doing was reversed, holding as we did that the motion to dismiss should have been granted at the cost of appellee so moving.

On this rehearing, the question has been again carefully considered and the majority of the court adhere to that conclusion, but wish to extend the discussion on that subject.

 There is no doubt of the general rule that if pending an appeal "appellee * * * does, or relinquishes the right to do, some act in respect to which the appeal was taken," the appeal should be dismissed. Caldwell v. Loveless, 17 Ala.App. 381, 85 So. 307; 3 Am.Jur. 308, section 733; 4 Corpus Juris Secundum, Appeal and Error, p. 1955, § 1354 f, page 1967, § 1362; Alabama Power Co. v. City of Sheffield, supra.

As to this there is no controversy. But it is contended that this situation is within the exceptions to such rule. There are two exceptions to it, (1) is where, if no decision of the question is made on the appeal, collateral rights of the parties dependent upon its decision will be left undetermined, as settled in the following cases: Southern Pacific Co. et al. v. I. C.C., 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283; Boise City Irr. & Land Co. v. Clark, 9 Cir., 131 F. 415; Postal Tel.-C. Co. v. City of Montgomery, 193 Ala. 234, 69 So. 428, Ann.Cas. 1918B, 554; Bradford v. State, 226 Ala. 342, 147 So. 182. And (2) where the rights of the public would thereby be affected. Southern Pacific Terminal Co. v. I.C.C., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310; Boise City Irr. & Land Co. v. Clark, supra; United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; 3 Am.Jur. 310, note 10; 4 Corpus Juris Secundum, Appeal and Error, § 1362, p. 1969, note 6.

The text of 3 Am.Jur. supra, states the exception as follows: "Where the ques-tion involved is a matter of public interest": or, in 4 Corpus Juris Secundum, Appeal and Error, § 1362, p. 1969, it is said, "if * * * the intervening event was due to the voluntary act of appellee the appeal will not necessarily be dismissed." Two cases from Washington State are cited, but they add nothing to our inquiry. And on page 1970, § 1362, note 18, of 4 Corpus Juris Secundum, Appeal and Error, it is said where the subject of litigation is no longer in issue, the appeal will be dismissed unless the substantial rights and equities of the parties require adjudication.

The distinction here drawn is illustrated in the case of Bradford v. State, 226 Ala. 342, 147 So. 182. That was quo warranto, and the question was ultimately to determine whether the city attorney of Fairwas tried in the circuit court before that field had a fixed term of office. The suit term, if it existed, had expired, but on appeal it was submitted in this court after the term expired. But the right to the emoluments of the office continued to exist, notwithstanding it had become moot in so far as the performance of the duties thereafter were concerned. The court differentiated the cases of Ham v. State, 172 Ala. 239, 54 So. 996, and State ex rel. Case v. Lyons, 143 Ala. 649, 39 So. 214.

In these cases, also in Coleman v. Mange, 238 Ala. 141, 189 So. 749, the only question was as to the right to hold the office for a certain term. Since that term had expired, the question was moot. But in the Bradford case, supra, though it was moot as to the main issue, that is the holding of the office for an expired term, it was held in court on account of the rights existing between the parties to determine which was entitled to the emoluments. The other cases were not overruled, nor their authority questioned. Surely the members of the public have as much interest in knowing whom to recognize as the holder of a public office as to have the usury statute construed as applied to a given state of facts.

Neither situation is that sort of public interest which will hold a case in court after there ceases to be any rights of the parties to be determined. But if either or both parties have collateral rights growing out of the transaction, the court will hold the case and decide it.

This differentiation is also well illustrated in Postal Tel.-C. Co. v. Montgomery, supra. In that case an injunc-

tion had been issued relating to the performance of acts during the year 1914. That year expired, and the main question was moot. But the court held the case and decided it because its decision affected liability on the injunction bond which had been given.

In another injunction case, when the question became moot, the appeal was dismissed. County of Montgomery v. Montgomery Traction Co., 140 Ala. 458, 37 So. 208.

In Ex parte McFry, 219 Ala. 492, 122 So. 641, the proceeding was dismissed after it became moot, saying there was no such right to be determined as in the Postal Tel.-C. Company case, supra.

In Adams v. Riddle, 233 Ala. 96, 170 So. 343, 107 A.L.R. 657, the case was not dismissed after the term of the lease in question expired because under the Postal Tel.-C. Company case, supra, rights remained undetermined, such as a controversy. as to its continuance, and liability on supersedeas bond on appeal to the circuit court.

On the subject of a public interest, it is conceded that every person belonging to the public is interested in having decided every question of law which governs individual conduct or interprets contracts such as any of them may enter into.

The public have no other interest in the interpretation of alleged usurious contracts than other kinds thought to violate some statute. But that is not the sort of public interest which will be taken care of so as to prevent the dismissal of an appeal when there ceases to be a personal interest of the parties in its decision. As pointed out in some of the cases, it must affect the interest of the body politic as, for example, its revenue laws, or some situation "affected with a public interest" as public utility rates, where the state or government is said to be "as a substantial trustee for the public." Southern Pacific Terminal Co. v. I. C. C., supra [219 U.S. 498, 31 S.Ct. 284, 55 L.Ed. 310].

It is the judgment of a majority of the court that the. situation here presented does not come within an exception to the general rule which obtains in this and apparently all other jurisdictions.

We agree with Justice BOULDIN that it was the right and duty of the Court of Appeals to decide whether this case comes within an exception to the general rule, as it decides all other legal questions which come before it. But on certiorari to this court, it becomes our duty to review a decision of that sort as of all other legal questions.

We have concluded that the Court of Appeals did not duly make application of the law to this situation, and that the application for rehearing should be and it is overruled.

Application for rehearing overruled.

THOMAS, FOSTER, KNIGHT, and LIVINGSTON, JJ., concur.

GARDNER, C. J., and BOULDIN and BROWN, JJ., dissent.

BOULDIN, Justice (dissenting).

Upon a careful reading of the opinion of the Court of Appeals, I am of the opinion it was for that court to determine whether the public interest required that court to review this case. 4 Corpus Juris Secundum, Appeal and Error, § 1354; 4 Corpus Juris Secundum, Appeal and Error, § 1362, page 1969; 3 Am.Jur. page 310; Southern Pacific Terminal Co. v. I. C. C., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310; Southern Pacific Co. v. I. C. C., 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283.

GARDNER, C. J., and BROWN, J., concur in the foregoing dissent.

BROWN, Justice (dissenting).

The writer is of opinion that the Court of Appeals has promulgated a sound opinion on the law of usury, has entered such judgment as the statute authorized, and the opinion and judgment should not be disturbed here on certiorari. That it was within the province of that court to determine, as a fact, that the question presented was of such public interest as justified a re-examination of a former decision of the court being used by a usurious moneylender to carry on his unlawful scheme originating in New York and Memphis, and spreading out through the States, like the tentacles of an octopus, fastening on to the flesh of the necessitous, ignorant and poor, sucking from them their life blood to enrich this violator of the law.

The holding of the majority, whether so. intended or not, has the effect to destroy the appellant's statutory right of appeal after it had been perfected, by allowing the appellee, we assume, to write on the face of the judgment that it has been or

is cancelled, though in fact it was not satisfied—an act not invited by appellant, and which he has resisted to the present moment. It also undermines and wholly destroys the sound discretion vested in the Court of Appeals to consider the case on its merits and administer justice in the light of facts existing when the controversy arose. McMinn v. Karter, 123 Ala. 502, 26 So. 649; Empire Coal Co. v. Bowen, 195 Ala. 348, 70 So. 283.

No case has been cited, and after search I have found none, that holds, the adverse party by his own act and for the sole purpose of preventing the court from considering the merits, can render the questions moot. The authorities are to the contrary—the questions must become moot *"without any fault of the appellee or defendant in error."* 3 Am.Jur. 209, § 733; Fisher v. Baker, 203 U.S. 174, 27 S.Ct. 135, 51 L. Ed. 142, 7 Ann.Cas. 1018; Lake Erie & W. R. Co. v. Huffman, 177 Ind. 126, 97 N.E. 434, Ann.Cas. 1941C, 1272. [Italics supplied.]

There is no question of "collateral right of the parties" mentioned in one of the stated exceptions of the majority. The rights here were direct and immediate, the question of liability on a usurious contract, a contract, condemned by the statute. Code 1923, § 8567; McCormick v. Fallier et al., 223 Ala. 80, 134 So. 471; First Nat. Bank of Opp v. Cotton, 231 Ala. 288, 164 So. 371.

In the last case cited, supra, it was observed: "Usury laws are for the protection of the borrower against the *cupidity of the lender.* The borrower may not be able to figure the amount of lawful interest included in the face of the paper maturing at a future date, or he may confide in the banker [lender] to make the calculation." 231 Ala. page 292, 164 So. page 374. [Italics supplied.]

But it is argued that there is no difference between legitimate contracts and usurious contracts in so far as the rule under consideration is concerned. It is enough to say that the right to make legitimate contracts is one of the liberties preserved by the Constitution. City of Mobile v. Rouse, 233 Ala. 622, 173 So. 266, 111 A. L.R. 349.

Usurious contracts, on the other hand, are as a matter of public policy condemned as *"tainted* with an evil and wrongful intent," Barclift v. Fields, 145 Ala. 264, 41 So. 84, 85, and as "offensive to the policy and posi-tive mandate of the law." Hawkins v. Pearson, 96 Ala. 369, 11 So. 304; Mc-Cormick v. Fallier et al., supra. [Italics supplied.]

The exception to the rule dealt with by the Court of Appeals, and now under consideration here, is, where the question involved is a matter of public interest, the appeal will not be dismissed if the intervening event is brought about by the act of the adverse party, or, we add, designedly for the purpose of preventing a re-examination of the question by the court to which the appeal is taken, to correct misleading tendencies in a former opinion of that court which is being used by the appellee to perpetuate the evil and wrongful practice, offensive to the policy and positive mandate of the law. See 4 Corpus Juris Secundum, Appeal and Error, p. 1969, § 1362; Graff v. Tacoma, 61 Wash. 186, 112 P. 250.

The voluntary act of the appellee in entering a cancellation on the face of the judgment record, without consideration, after the appellant had perfected his appeal, is an admission by the appellee that his claim was founded on a usurious contract, and was an act of "prudence" to prevent the re-examination by the Court of Appeals, in the light of the facts. Litigants, as a usual rule, do not withdraw just claims founded on valid, enforcible contracts, because they have to incur attorneys' fees to enforce them, and especially where the note, the foundation of the suit, provides that all costs shall be taxed against the payor.

Shylock, the loan shark, portrayed in the Merchant of Venice, also withdrew his claim and left the court when "the most just Judge—a Daniel come to judgment" in the person of Portia—ruled:

"This bond doth give thee here no jot of
 blood,—
The words expressly are, a pound of flesh:
Take then thy bond, take thou thy pound of
 flesh;
But, in the cutting it, if thou dost shed
One drop of Christian blood, thy lands and
 goods
Are, by the laws of Venice, confiscate
Unto the state of Venice."

2 Shakespeare, p. 405, Beaux Arts Edition.

The public policy declared by the statute against usury is supported by Divine Authority, Exodus, Ch. 22, V. 25, and a his-

torical background running through all civilization. We quote from 66 C.J. p. 142, § 5: "It seems that the taking of interest for the loan of money, or at least taking excessive interest, has been regarded with abhorrence from the earliest times. We are told that such usury was prohibited by the early laws of the Chinese and Hindus, and by the Koran. The Mosaic law prohibited the Jews from exacting interest on loans to their brethren, but permitted interest to be taken from Gentiles. Among the Athenians moderate interest charges were allowed, but custom fixed the maximum rate at twelve per cent, and anyone exacting a higher rate was looked on with contempt as being vile and ignominious. Among the Romans interest charges were limited by the Twelve Tables, and subsequently totally abolished. Commercial necessity revived the practice of making loans at interest, which were, however, strictly regulated by later legislation. During the Middle Ages the people of England and especially the English church entertained the opinion then current in Europe that the taking of any interest for the loan of money was a detestable vice, hateful to man and contrary to the laws of God. It is said that not only was the usurer liable during his life to the censures of the church, but after his death his chattels were forfeited to the king, and his lands escheated to the lord of the fee. Contracts for interest not exceeding ten per cent were expressly legalized by act of parliament in 1545; but it was also provided that a contract for a loan at a rate of interest in excess of ten per cent should be wholly void both as to principal and interest. This act was repealed in 1555, but restored in 1570. Subsequent acts gradually reduced the rate of interest allowed until 1714 when by statute the lawful rate was fixed at five per cent, where it remained until 1854, when all restrictions on interest charges were removed. The early colonial usury acts were modeled after the English act, the rate of interest allowed being usually higher, however. These early enactments, as would be expected, adopted the penalty for usury fixed by the statute of the mother country, and made all usurious contracts wholly void. The tendency of subsequent statutes, however, has been steadily to mitigate the punishment inflicted on the usurer, who now, in most of the American jurisdictions, is required to forfeit only the usurious interest, either wholly, or as to the illegal excess, although it appears to have been thought in the early times that no action could be maintained on any contract to pay interest, since such contracts were unlawful and void. There is not wanting authority for the statement that contracts for reasonable interest were valid at common law."

The systematic violation of such public policy, and the positive mandate of the law enacted for the protection of the necessitous, poor and ignorant, is clearly such "matter of public interest," as justified a consideration of the case on its merits. The writ of certiorari should therefore be denied.