50 So.2d 253

**MEAD v. EAGERTON, State Public Accounts et al.**

**3 Div. 581.**

Supreme Court of Alabama.

Jan. 25, 1951.

Henry C. Meader, of Montgomery, Frank E. Spain, of Birmingham, Willis V. Bell, Jr., of Montgomery, and John P. Ansley, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., for appellees.

FOSTER, Justice.

This bill was filed by a taxpayer seeking an injunction, temporary and permanent, against appellees who are the chief examiner of public accounts, the state treasurer, the state comptroller and the state auditor. The prayer for the injunction is as follows: "Restraining and enjoining the respondents, Ralph P. Eagerton, as chief examiner of public accounts of the State of Alabama, John Brandon, as treasurer of the State of Alabama, John Graves, as comptroller of the State of Alabama, and Dan Thomas, as auditor of the State of Alabama, and each of them from using or attempting to use, paying or attempting to pay, any money that has accrued to or that is in the funds of the department of examiners of public accounts in the treasury of the State of Alabama for the purpose of acquiring the official bond of Ralph P. Eagerton as chief examiner of public accounts, from the state surety insurance fund, or for using or for paying out any other money in their possession or under their control for such purpose, or issuing any warrants therefor."

A demurrer to the bill and the prayer for temporary injunction were set down for hearing on August 2, 1950. A decree was rendered on that submission August 3, 1950, in which the demurrer was sustained, and another decree or order denying the motion for a temporary injunction was rendered. An appeal was taken from both decrees: both being appealable. Title 7, sections 755, 1057.

The equity of the bill goes to the validity and effect of the Alabama statute contained in Article 2, Title 28, sections 329 to 338, Code. The substance of that statute may be stated as follows: section 329 sets up a fund in the state treasury to be known as the state surety insurance fund, for the purpose of insuring the state or any and all counties or municipalities in said state against loss of moneys belonging to the state, counties or municipalities on account of certain conduct of such officers.

Section 330 requires the director of finance to determine the total amount of the

bonds required to be given by *state* and *county* officers, including all officers named in section 329, and the amount of premiums charged for the same.

Section 331 makes the premium charged to be based on commercial rates as of August 1, 1935 by surety companies; and that all such premiums shall be paid to the department of finance at the time of executing the bond by the appropriate state department and by the county treasurers, respectively.

Section 332 directs the disposition of the premium money, and that it "shall constitute a sinking fund and surplus, which shall be subject to the requisition of the director of finance, with the approval of the governor, for the payment of the losses herein provided".

Section 333 provides that "The fund of one hundred thousand dollars transferred from the state insurance fund to the state security insurance fund shall be available only" in case the losses shall exceed the premiums collected. The original Act approved September 7, 1935, General Acts 1935, page 782, carried an appropriation of $100,000.00 from the state insurance fund to the state insurance fund.

Section 334 provides that in event such sinking fund shall reach $500,000.00, the surplus shall be used to reimburse the state insurance fund on account of said appropriation.

Section 335 gives authority to the director of finance and governor to make rules and regulations necessary for the proper and full performance of the Act.

Section 336 provides that the department of finance shall be provided the form of the bonds for execution and shall execute the bonds for the state of Alabama.

Section 337 provides that any person or governmental agency may sue the officer in the county of the officer's residence, and if a judgment is rendered for plaintiff, the state comptroller shall issue a warrant for the same on the certificate of the clerk of the court, which shall be paid by the treasurer from said fund so created.

Section 338 provides that article of the Code shall not be effective except upon a proclamation by the governor so declaring. That was also a feature of the original act.

The bill alleges that the governor made such proclamation on November 25, 1949. That up to that date the Act of 1935, supra, and Code sections, supra, remained suspended and inoperative on the statute books from September 1935 to November 1949 (fourteen years), and that four governors served in that period. That the governor so proclaiming in November 1949 acted solely in his discretion and found and recited no facts upon which it was based.

The bill does not allege that any rules and regulations have been made as required by section 335, supra. That Eagerton, as chief examiner of public accounts, is proposing and arranging to cancel his official bond on or before October 1, 1950, and to execute his official bond with the state surety insurance fund. That the Act is in violation of the Constitution in the respects which we will discuss; also that section 331 is vague, uncertain and its intent cannot be ascertained and given effect, and that it is unenforceable and void.

Motion to Dismiss Appeal.

The first matter called to our attention on this appeal is the motion to dismiss the appeal because the question involved is alleged to have become moot. The situation which it is claimed renders the question moot is as follows: The motion to dismiss alleges that application was made to this Court to restrain the conduct sought to be enjoined pending the appeal. This Court denied said motion. It then alleges that thereafter appellee Eagerton, as chief examiner of public accounts, acquired an official bond with the state surety insurance fund; that Graves, as comptroller, drew a warrant for $62.50, the amount of the premium payable to the department of finance and the state surety insurance fund and charged it to the department of examiner of public accounts. Thereafter that appellees have performed the acts sought to be enjoined, and no further controversy exists between the parties to this cause.

This contention needs separate consideration in respect to the appeal from the

separate decrees of the trial court. But there are certain principles of law which should be noted as applicable to them both.

The principle is thoroughly well settled, apparently without conflicting authority, that after service of notice of a bill in equity, which seeks a prohibitive injunction against respondents, but no temporary injunction is issued, and the respondents do the act sought to be enjoined, they do so at the peril of an injunction being ordered on the final hearing, for it is within the power of the court, finally holding that an injunction was proper, to compel a restoration of the status quo.

In Jones v. Securities and Exchange Comm., 298 U.S. 1, 56 S.Ct. 654, 658, 80 L.Ed. 1015, the court observed: "The conclusion to be drawn from all the cases is that after a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, he acts at his peril and subject to the power of the court to restore the status, wholly irrespective of the merits as they may be ultimately decided. 1 High on Injunctions (4th Ed.) § 5(a)."

It was held in Texas & New Orleans R. Co. v. Northside Belt Rwy. Co., 276 U.S. 475, 48 S.Ct. 361, 72 L.Ed. 661, where a defendant, with notice of filing of a bill for injunction, proceeds to complete the act sought to be enjoined, the court may by mandatory injunction compel a restoration of the status quo. See, also, Tucker v. Howard, 128 Mass. 361, 363; Town of Platteville v. Galena & So. Wis. R. R. Co., 43 Wis. 493, 506–507.

"Although injunction ordinarily issues to prevent future acts rather than to remedy what is past, a defendant who proceeds to do the things complained of after suit to enjoin them has been filed and notice thereof given to him cannot defeat the injunction on the ground that the acts sought to be restrained have already been done, for he acts at his peril in such case, and subject to the power of the court to restore the status. The court may award complainant damages or compensation for acts done by defendant pending suit to restrain them." 28 Am.Jur. section 6, page 200. See to the same effect 43 C.J.S. Injunctions, § 5, page 411, note 37; 32 Corpus Juris 24, Section 6; Turney v. Shriver, 269 Ill. 164, 109 N.E. 708; New Haven Clock Co. v. Kochersperger, 175 Ill. 383, 51 N.E. 629; Thornton v. Schobe, 79 Colo. 25, 243 P. 617; Werner v. Norden, 87 Colo. 339, 287 P. 644; State of Oklahoma ex rel. Tharel v. Board of Com'rs, 188 Okl. 184, 107 P.2d 542; Smith v. Graham, 161 App.Div. 803, 147 N.Y.S. 773.

The principle has been applied to analogous situations. In Walling, Adm'r, v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705, it was held while voluntary discontinuance of alleged illegal activity does not operate to remove a case from the ambit of judicial power, it may justify the court's refusal to enjoin future activity of such nature when it is combined with a bona fide intention to comply with the law and not to resume the wrongful acts. See, Hecht v. Bowles, Price Adm'r, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

In our case of Vaughn v. Brue, 245 Ala. 107, 16 So.2d 17, 19, 150 A.L.R. 668, we held that though title of a stranger purchasing at judicial sale under erroneous judgment will not be defeated or impaired by subsequent reversal of judgment, a party to the suit who purchases at such sale does so subject to risk that the judgment will be reversed and one who purchases from such party litigant is not a bona fide purchaser, observing: "this case should be determined on principles which are established in this state and which are not based on the doctrine of *lis pendens*." In Union Central Life Ins. Co. v. Thompson, 229 Ala. 433, 157 So. 852, the foreclosure of the mortgage after filing of a bill to enjoin foreclosure did not oust the court of jurisdiction, but remained subject to equity of the bill and may be ignored or set aside by the court, if complainant is awarded relief. See, McDermott v. Halliburton, 219 Ala. 659, 123 So. 207; Patillo v. Tucker, 216 Ala. 572, 113 So. 1; Brown v. Bell, 206 Ala. 182, 89 So. 659; Alabama Power Co. v. City of Scottsboro, 238 Ala. 230, 190 So. 412(25).

In the case of Alabama Power Co. v. Sheffield, 232 Ala. 53, 166 So. 797, cited by

appellees, a bill was filed by appellant seeking to enjoin the performance of a certain contract between it and the United States. The court refused to issue the injunction and sustained demurrers to the bill. An appeal was then taken and thereafter said agreement, the sole basis of the suit, terminated. There was then made a new contract which was no part of the record and was not considered by the trial court.

That is clearly different from the instant case. In our case, instead of abandoning the matter sought to be enjoined, the respondents proceeded to do it. It is also different from Walling v. Youngerman-Reynolds Hardwood Co., supra, and Hecht v. Bowles, supra, which related to conduct continuous in nature, and though that which was complained of was discontinued, it could be re-established and pursued.

In the case of Willis v. Buchman, 240 Ala. 386, 199 So. 892, 132 A.L.R. 1179, also cited by appellees, the defendant appealed from a judgment at law against him. After the appeal was taken the plaintiff in the judgment entered a cancellation and discharge on the record of the judgment. It was held that the motion to dismiss the appeal was proper. The only matter considered on the motion, as controversial, was that since usury was involved, public interest demanded its consideration. The Court held that interest in such matter should not prevent a dismissal. This case is no authority applicable to the facts here presented.

In Bradford v. State ex rel. Esslinger, 226 Ala. 342, 147 So. 182, it was held that a quo warranto case should not be dismissed because the term of the office had expired, for that the emoluments of the office continued to be a matter of controversy.

■ The question we are now considering on this motion is whether a controversy is moot when it is whether certain funds in the state treasury should stand to the credit of the state surety insurance fund and be subject to its requirements or to the credit of the department of examiners of public accounts and be subject to its requirements. On final hearing the Court may determine that controversy, and if it is held that the fund was improperly placed to the credit of the state surety insurance fund, it could be ordered by the Court to be retransferred. It is not now beyond such power of the Court. So that the equity of the bill and whether it is subject to demurrer has not become moot.

■ In so far as concerns the order denying a motion for a temporary injunction, we also think that it is not moot. The bill not only seeks to enjoin payment of the premium of October 1950, but also in effect those maturing in October of future years during the term of the chief examiner of public accounts. It was only the premium due October 1950 which has been paid. If it be conceded that a prayer for temporary injunction becomes moot, but while the cause is pending the act sought to be enjoined is done, it does not thereby prevent a temporary injunction as to matters subsequently occurring also included in the prayer. That is the present status.

Moreover, if this Court on appeal in this case holds that the bill has equity and that the temporary injunction should have issued, this Court in so holding and decreeing could also order a restoration of the status existing when the bill was filed and enjoin a change of it pending the suit. Jones v. Securities and Exchange Comm., supra.

So that as to both decrees, we think the motion to dismiss the appeal should be and is overruled.

### On its Merits.

We have observed that the surety insurance fund, to which we have referred, originated in an Act of September 7, 1935, General Acts 1935, page 782. Section 8 of that Act is "That this Act shall become effective upon the proclamation of the Governor." As the Act went into the Code of 1940, section 338 of Title 28, provides: "The provisions of this article shall not be effective except upon a proclamation issued by the governor declaring that such chapter is in force and effect."

The bill alleges that this proclamation was issued by the governor on the 25th day

of November, 1949. So that according to its terms the Act was dormant and ineffective until that time, both under the terms of the original Act and under the terms of the Code section.

It is our view that that status amounts to a delegation of legislative power, in violation of sections 43 and 44 of the Constitution. The Act did not provide that upon the finding by the governor of certain facts or circumstances to exist, and upon the basis of such finding he should make a proclamation thereof, thereby rendering the Act effective. The legislature cannot confer upon any person or authority the right, in its discretion to be exercised without regard to fixed standards set up by the Act, to declare when an enactment shall become effective. It can only delegate to such person or authority the right to determine the facts and circumstances, whose finding shall determine the effective date of the Act. 16 C.J.S., Constitutional Law, § 133, p. 342, note 28; Ward v. State ex rel. Parker, 154 Ala. 227, 45 So. 655; Porter Coal Co. v. Davis, 231 Ala. 359, 362, 165 So. 93; Morton v. Lusk, 248 Ala. 110(23), 26 So.2d 849; In re Opinion of the Justices, 249 Ala. 389(3), 31 So.2d 558; Hawkins v. State Board of Adjustment, 242 Ala. 547(4), 7 So.2d 775; Patterson v. Jefferson County, 238 Ala. 442, 191 So. 681; Opinion of the Justices, 244 Ala. 386(4), 13 So.2d 674.

Of course this has no reference to the constitutional requirement of approval of legislative enactments as contained in section 125.

The legislature may make an appropriation and set up a board to determine the facts on which it is declared to operate. John E. Ballenger Const. Co. v. State Board of Adjustment, 234 Ala. 377, 175 So. 387; Dunn Const. Co. v. State Board of Adjustment, 234 Ala. 372, 175 So. 383; State ex rel. v. State Board of Adjustment, 249 Ala. 542, 32 So.2d 216; Opinion of the Justices, 244 Ala. 386, 13 So.2d 674; Walls v. City of Guntersville, 253 Ala. 480(6), 45 So.2d 468.

Section 43 and 44, Constitution, do not invalidate local option laws. Opinion of the Justices, 232 Ala. 60, 166 So. 710; State,

ex rel. Crumpton v. Montgomery, 177 Ala. 212, 59 So. 294; Ward v. State, supra; Phenix City v. Alabama Power Co., 239 Ala. 547(3), 195 So. 894; Opinion of the Justices, 253 Ala. 111, 43 So.2d 3.

We know of no authority in this state which justifies a delegation to the governor of the power to declare what shall be the effective date of an act duly passed, when such declaration is merely the result of his own will and not of his determination of the facts upon which the act itself declares it to be effective.

In Re Opinion of the Justices, 242 Ala. 57, 4 So.2d 654, the members of the Court were equally divided in opinion as to whether an act was mandatory requiring the governor to make proclamation when a certain state of facts shall occur, or whether it conferred on him power to exercise his discretion in that event. Some of them held it did not impose a duty but a discretion and, therefore, was a delegation of legislative power, in violation of the Constitution. Other members of the Court held the act merely delegated the power to ascertain a fact upon which the statute operated *ipso facto*. There was no difference of opinion among the justices as to what constitutes a delegation of legislative power, or that the result was properly declared by both groups of the Court upon the basis of their respective judgment as to the proper interpretation of the act.

In the case of Smith v. Speed, 50 Ala. 276, it is said that the purpose of the Constitution in respect to appropriations "was to prevent the executive power from controlling the public moneys."

We do not find from a study of appropriations acts in this state that this theory has not been generally observed by the legislature. Section of 14½ of the Equalization Act of 1927, General Acts 1927, page 449, makes the respective appropriations payable upon a finding by the governor that the condition of the treasury shall warrant it. We have not found that appropriations by acts duly passed and approved were made dependent upon the mere discretion of

the governor not based upon some defined circumstances.

Objection is also made to this statute upon other grounds: one is that it is vague, uncertain and ambiguous, and that it is inconsistent with our constitutional form of government. Attention is called to the fact that under section 337, Title 28, Code, in order to make an amount payable out of the surety insurance fund to some other state agency, it is necessary for such agency to sue the officer in the county of his residence for a breach of the obligation of the bond and judgment must be rendered against such officer. The clerk thereupon certifies the existence and the amount of such judgment to the state comptroller who shall issue a warrant upon the treasury for the payment of the amount of said judgment. No provision is made for the director of the department of finance or other state official to participate in the defense of such a suit. According to the terms of the statute, the official sued might not see fit to make defense or might be in collusion with the head of the department in which he is employed, or not be available in Alabama for service of such a suit. There is no provision in this statute which authorizes anyone to intervene so as to make it a contested case. If it be assumed that such intervention would be authorized under the general statute for intervention, Title 7, section 247, Code; Franklin v. Dorsey-Jackson Chevrolet Co., 246 Ala. 245, 20 So. 2d 220, 157 A.L.R. 154, the result would be a suit in a court of traditional jurisdiction in common law form by one agency of the state against another agency of the state. In that situation apparently it would be the duty of the attorney general both to prosecute and defend the same suit. Section 244, Title 55, Code.

■ It therefore presents a status, as we have said, which is contrary to our constitutional form of government and especially section 14 which prohibits the state from being a defendant in any court of law or equity. This includes state agencies. Dunn Const. Co. v. State Board of Adjustment, 234 Ala. 372(4), 175 So. 383; John E.

Ballenger Const. Co. v. State Board of Adjustment, 234 Ala. 377(2), 175 So. 387; State Tax Comm. v. Commercial Realty Co., 236 Ala. 358, 182 So. 31.

It is our view that the Surety Insurance Fund Act is merely a method by which the state may set aside and hold for its purposes a certain amount of money, $100,-000.00, transferred from the state insurance fund and also amounts charged to the appropriations of various departments of the state for premiums on the official bonds required by law. Being in one aspect but a transfer to one fund from another and prescribing the circumstances which will control such transfer, the situation is no justification for a suit in a duly constituted court between such agencies. The legislature could very well set up a board to determine when such transfer should be made from one fund to another in keeping with the object sought to be accomplished, as was done in respect to the insurance fund, sections 317–328, Title 28, Code; but to put jurisdiction of such a situation on a court of law is entirely out of harmony with our system.

■ It is interesting to note that we find only two states in the Union which have undertaken to set up such a proceeding. One is the state of Nebraska, which was considered by the Supreme Court of that state in the case of Laverty v. Cochran, Governor, 132 Neb. 118, 271 N.W. 354. The opinion in that case referred to the fact that the constitution of Nebraska requires public officials to execute official bonds. (Alabama has no such constitutional requirement.) The question then arose of whether or not a bond executed under such authority as this by the proper officer on behalf of the state surety insurance fund was a bond within the meaning of the constitution. The court held that it was not. That the status was, as we have indicated above, merely to provide the circumstances and standards which will control the transfer of public funds from one public agency to another, and that the situation did not call for a contractual obligation. The act was annulled for other reasons: one being that it imposed judicial powers upon executive

officers as well as legislative powers. The court held that judicial powers could not be conferred upon administrative officers. That is not, as we have held, a proper interpretation of our Constitution. Section 139 of our Constitution has been held by us to have a different effect. Boyd v. Garrison, 246 Ala. 122(7), 19 So.2d 385; State Tax Comm. v. Bailey & Howard, 179 Ala. 620, 60 So. 913; State Tax Comm. v. Stanley, 234 Ala. 66, 173 So. 609.

While the authority of the Nebraska court is not controlling here, it does serve to express our view of the nature of such a proceeding set up by the legislature and to illustrate, in our opinion, the want of conformity to our constitutional system.

North Dakota also has had experience in connection with such legislation. Its first case on that subject is that of State ex rel. Miller v. Taylor, 27 N.D. 77, 78, 145 N.W. 425. The act was declared invalid for one reason that it attempts to give to the commissioner of insurance the arbitrary power to determine how much of the fund shall be applied to the payment of losses and how much to other expenses, and because no limitation is put upon the amount which may be used for expenses, and that it is an unwarranted delegation of judicial power to an administrative officer, in that it commits to him the sole right to determine the amount to be given to the subdivision involved, whose officers are insured, and also delegates to an auditing board the power to determine when bonds of officers shall be cancelled. The act in question only had application to county, city, school district and township officers required by law to furnish a bond and made it obligatory for such bond to be made by the bonding department fund. Later another act was passed by the legislature of North Dakota in order to relieve the situation of the objections which annulled the previous act, and in the case of State ex rel. Linde v. Taylor, 33 N.D. 76, 156 N.W. 561, L.R.A.1918B, 156, that act was upheld against the constitutional objections which were made. The court went into great particularity in analyzing the act; pointing out that state did not have constitutional requirements as to official bonds (and

therefore was not in the status of the Nebraska court). It may be observed that this act as finally upheld had no provision in it for a suit in common form to determine the amount which would be transferred from the fund which was set up, but provided for administrative machinery for that purpose, and largely upon the basis of that status the statute was upheld. See, also, 66 A.L.R. 796–797; 43 Am.Jur. 184, section 413.

The bill in the instant case does not allege whether the $100,000.00 has been transferred from the state insurance fund to the state surety insurance fund, referred to in section 333, Title 28, Code. The Act of 1935 did contain a provision by which there was transferred from the state insurance fund to the state surety insurance fund the sum of $100,000.00, but that Act never became operative according to its terms until the governor made his proclamation in 1949, and when the governor did so the Act of 1935 had become superseded by the Code section. So that assuming the validity of the statute, as set out in the Code, there is no direct provision for such transfer to be made. The bill does not allege whether such transfer was in fact made.

Section 335 of Title 28, Code, authorizes the director of finance, with the approval of the governor, to make such rules and regulations as are necessary and essential for the proper and full enforcement of this Article, not inconsistent with the Constitution and laws of the state, and section 336 requires said department to provide forms or bonds to be executed, and another section provides that the premium rate shall be based on commercial rates of such transactions as of August 1, 1935.

Even if the proclamation of the governor fourteen years after the enactment of this Act had the effect of putting it in operation, it seems clear that it was not the intention of the legislature for it to be operative wtihout a transfer of said $100,000.00, above mentioned, or until the director of finance and the governor shall make the necessary rules and regulations, including a form of the bond to be executed and an ascertainment of the premium rate based

76

upon the commercial status operative August 1, 1935. The bill not alleging anything about such matters, we cannot assume that they did not occur as required by law. But in the event they have not occurred, it is our belief the Act could not be operative until such event.

Many of these observations are not necessary to the result of this suit since we find that the statute in question is a delegation of legislative authority in violation of sections 43 and 44 of the Constitution of Alabama. But we think such observations are not inappropriate in the event the litigation should not result as here contemplated or the legislature should see fit to amend the law as now set up.

Objection is also made that it violates section 93 of the Constitution, in that it is a lending of credit to an individual, association, or corporation, but we see nothing in the situation which makes it subject to that contention. It is an established policy of this state that section 93, supra, does not prohibit the state from lending its credit to a public corporation organized for the purpose of carrying on public functions. Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; Rogers v. Garlington, 234 Ala. 13, 173 So. 372.

We do not think it is engaging in business by the state in competition with private enterprise in such way as to make it subject to section 93 of the Constitution.

The result of the foregoing discussion is that, in our opinion, the demurrer to the bill should have been overruled and the temporary injunction granted. A decree will be entered overruling the demurrer to the bill and ordering the issuance of a temporary injunction against further conduct which is sought to be prohibited in the prayer of the bill upon the execution by complainant of a bond payable to the respondents in the sum of $1,000.00 with sureties to be approved by the register of the Circuit Court, in Equity, of Montgomery County, and conditioned as required by law.

Reversed, rendered and remanded.

BROWN, LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur.