SouthTrust Bank of Alabama, N.A. ("SouthTrust"), appeals from an order of the Etowah Circuit Court granting a preliminary injunction preventing SouthTrust from honoring a letter of credit. See Ala. R.App. P. 4(a)(1). Because the trial court exceeded its discretion in granting the injunction, we reverse and remand with instructions to dissolve the injunction.
 I. Facts
In 1995, the Airport Authority of India ("AAI") retained Transact International, Inc. ("Transact"), a Connecticut corporation, to build a cargo-handling facility at the Indira Gandhi International Airport in New Delhi, India. The contract between AAI and Transact ("the contract") included forum-selection and choice-of-law provisions requiring that any disputes related to the contract be resolved in New Delhi and according to Indian law. Webb-Stiles Company, Inc. ("Webb-Stiles"), a manufacturer of conveyor systems with a place of business in Gadsden, Alabama, was one of Transact's subcontractors on the airport project.
In connection with the contract, AAI and Transact joined with SouthTrust and the State Bank of India ("SBI") in a so-called four-way security arrangement.[1] First, SBI agreed to guarantee Transact's *Page 708 
performance to AAI. In return, SBI required that Transact obtain an irrevocable standby letter of credit in favor of SBI.[2]
Webb-Stiles helped Transact obtain the letter of credit from SouthTrust.
On November 13, 1996, SouthTrust issued its letter of credit no. SB9937 ("the letter of credit") in the amount of $175,661. Transact signed the letter of credit as applicant, and Webb-Stiles signed as surety for Transact's obligation to reimburse SouthTrust for any payment made under the letter of credit.[3] Although the letter of credit was originally to expire on September 30, 1998, the parties extended it to January 31, 2005.
Between 1999 and 2004, AAI and Transact became involved in a dispute over whether Transact had satisfied its obligations under the contract.[4] By late 2004, the parties were still unable to resolve their differences, and AAI decided to look to its performance guarantee from SBI. On December 10, 2004, SBI notified SouthTrust that AAI had made a demand for the full amount of the performance guarantee ($175,661). In turn, SBI immediately made a demand on the letter of credit in the same amount.
Under its terms the letter of credit is payable by SouthTrust upon SouthTrust's receipt of a proper demand from SBI. It is undisputed that SBI's demand conformed to the requirements of the letter of credit.
Webb-Stiles sued to enjoin SouthTrust from honoring the letter of credit, claiming that AAI had fraudulently misrepresented its right to make demand against the SBI performance guarantee. After hearing testimony, the trial court found that AAI's cost to remedy any remaining deficiencies under the contract would not exceed $10,000 and that AAI itself owed Transact $158,000. As a result, the court found AAI's claim that Transact was materially in default under the contract to be fraudulent.
As a prerequisite to issuing an injunction, the trial court had to determine whether Webb-Stiles had an adequate remedy at law. It did so on the basis of a written statement that AAI submitted to the court, asserting that the contract required Webb-Stiles to pursue any claim against AAI in an Indian court and under Indian law.[5] In its statement, AAI also *Page 709 
asserted that Indian law would deny Webb-Stiles a remedy.
The trial court accepted AAI's statement as true and concluded that Webb-Stiles had no adequate remedy at law. It granted Webb-Stiles a preliminary injunction against SouthTrust, preventing payment on the letter of credit. This appeal followed.
 II. Standard of Review
The decision to grant or to deny a preliminary injunction is within the trial court's sound discretion. In reviewing an order granting a preliminary injunction, the Court determines whether the trial court exceeded that discretion. E.g., Johnson v.Willis, 893 So.2d 1138, 1140 (Ala. 2004).
As enacted in Alabama, the Uniform Commercial Code grants a trial court the power to enjoin payment of a letter of credit to prevent fraud:
 "If an applicant claims that a required document is forged or materially fraudulent or that honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant, a court of competent jurisdiction may temporarily or permanently enjoin the issuer from honoring a presentation. . . ."
§ 7-5-109(b), Ala. Code 1975. Before enjoining payment, however, the court must find that "all of the conditions to entitle a person to [injunctive] relief under the law of this state have been met." § 7-5-109(b)(3), Ala. Code 1975.
A preliminary injunction may issue only when the party seeking the injunction demonstrates
 "`(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the [party] has at least a reasonable chance of success on the ultimate merits; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction].'"
Ormco Corp. v. Johns, 869 So.2d 1109, 1113 (Ala. 2003) (quotingPerley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala. 1994)). This Court has stated that "[i]rreparable injury is injury that cannot be adequately compensated for by damages at law." BenettonServs. Corp. v. Benedot, Inc., 551 So.2d 295, 299 (Ala. 1989). A plaintiff that can recover damages has an adequate remedy at law and is not entitled to an injunction. Id. The party seeking an injunction has the burden of demonstrating that it lacks an adequate remedy. Ormco Corp., 869 So.2d at 1113.
 III. Analysis
In this case, Webb-Stiles has failed to satisfy its burden of proving the second element necessary for a preliminary injunction to issue — that it lacks an adequate remedy at law. See Part III.B., infra. The trial court therefore exceeded its discretion in granting the injunction.
Although Webb-Stiles's failure to prove this element is sufficient to decide the case, the Court further recognizes the importance of narrow application of the fraud exception of §7-5-109(b). The Court will therefore briefly review Alabama's approach to the issuance of injunctions in letter-of-credit cases.
 A. The commercial importance of letters of credit allows courts to enjoin payment only in extraordinary circumstances.
In Southern Energy Homes, Inc. v. AmSouth Bank of Alabama,709 So.2d 1180 (Ala. 1998), a case that was factually similar *Page 710 
to this case, this Court thoroughly analyzed an effort to enjoin payment of a letter of credit issued by an Alabama bank in connection with a foreign construction contract. In that case, Gesellschaft fur Bauen and Wohnen Hannover ("GBH"), a German corporation, had entered into a construction contract with Southern Energy. The contract provided that German law would govern any disputes arising under the contract and that Hannover would be the appropriate venue for any litigation. Deutsche Bank issued a performance guarantee in favor of GBH as security for Southern Energy's performance of the contract, conditioned on the issuance of a standby letter of credit. AmSouth then issued a letter of credit to Deutsche Bank. The terms of the letter of credit authorized Deutsche Bank to draw upon the credit upon notification that Deutsche Bank was required by GBH to disburse any amount under the performance guarantee.
Southern Energy and GBH became involved in a contract dispute, and GBH eventually decided to exercise its rights under the performance guarantee. The next day, Deutsche Bank presented AmSouth with a demand for payment. AmSouth informed Southern Energy that it would honor the demand, and Southern Energy sought to enjoin payment. Like Transact in this case, Southern Energy denied that it had materially breached the contract and characterized GBH's demand for payment on the letter of credit as fraudulent.
In response, GBH argued that AmSouth's obligation to pay under the terms of the letter of credit was independent of Southern Energy's contractual obligations and that, except in extremely rare circumstances, courts should not enjoin payment on a letter of credit. GBH also argued that Southern Energy failed to demonstrate irreparable injury.
In Southern Energy, this Court clearly set forth the principles governing international letters of credit:
 "Parties that enter into a credit arrangement do so to avail themselves of the benefits of that arrangement. Shifting litigation costs is one of the functions of a standby credit. In this situation, the parties negotiate their relationship while bearing in mind that litigation may occur. This cost-shifting function gives one party the benefit of the money in hand pending the outcome of any litigation. It is important to understand the functions of letters of credit in order to fully understand the consequences the fraud exception has on this commercial device. A demand for payment made upon a standby credit usually indicates that something has gone wrong in the contract. Indeed, this is the nature of the standby letter of credit. In contrast to the commercial credit, nonperformance that triggers payment in a standby credit situation usually indicates some form of financial weakness by the applicant. For this reason, parties choose this security arrangement over another so that they may have the benefit of prompt payment before any litigation occurs. We recognize that, as a general rule, letters of credit cannot exist without independence from the underlying transaction. Thus, when courts begin `delving into the underlying contract, they are impeding the swift completion of the credit transaction.' `The certainty of payment is the most important aspect of a letter of credit transaction, and this certainty encourages hesitant parties to enter into transactions, by providing them with a secure source of credit.'
 "The extensive use of the fraud exception may operate to transform the credit transaction into a surety contract. A *Page 711 
standby credit is essentially equivalent to a loan made by the issuing bank to the applicant. Like a surety contract, the standby credit ensures against the applicant's nonperformance of an obligation. Unlike a surety contract, however, the beneficiary of the standby credit may receive its money first, regardless of pending litigation with the applicant. The applicant may then sue the beneficiary for breach of contract or breach of warranty, or may sue in tort, but without the money. Parties to standby credit transactions have bargained for a distinct and less expensive kind of credit transaction. Therefore, we resist the temptation that the fraud exception invites to `transform the quick, efficient payment mechanism of the standby credit into the protracted surety contract inquiry.'"
709 So.2d at 1185-86 (citations omitted; emphasis added).
In Southern Energy, this Court went on to say that the parties to a letter-of-credit transaction "bargain for the advantages and disadvantages of credit" and "recognize its functions and negotiate its terms." 709 So.2d at 1187. The Court concluded that "to invoke the fraud exception [to payment of the letter of credit] would require an inquiry into the underlying contract" and that "`[f]raud claims should not become surrogates for breach of contract claims.'"[6] 709 So.2d at 1187. The Court's analysis was based on the danger of "disrupting the important commercial functions of credit law." 709 So.2d at 1187.
After setting forth these principles, and in light of the Court's reluctance to disrupt "the important commercial functions" of the letter of credit, the Court held that it would not address the merits of a claim of fraud in a letter-of-credit transaction when the plaintiff has an adequate remedy at law and will not suffer irreparable harm upon payment of the letter of credit.
 "Assuming that GBH had no legitimate basis to draw upon the bank guarantee, Southern Energy could sue in a German court to recover its money for the alleged fraud. Where an adequate legal remedy exists, Southern Energy will not suffer imminent or irreparable harm. Therefore, because Southern Energy did not satisfy the elements necessary for injunctive relief, it is unnecessary for us to further address the [fraud] issue. . . ."
709 So.2d at 1188 (citation omitted). Applying the same analysis to the instant case, the Court concludes that Webb-Stiles has likewise failed to satisfy the elements necessary for injunctive relief.
 B. Webb-Stiles is not entitled to a preliminary injunction because it has an adequate remedy at law.
If Transact were the plaintiff in the action underlying this appeal, the case would be essentially identical to SouthernEnergy. The Court's inquiry would then focus first on whether Transact had an adequate remedy at law in an Indian court. Although in this case it is a surety that is seeking the injunction, our analysis is the same. Webb-Stiles's only alleged loss is monetary. Because it has an adequate remedy at law, Webb-Stiles has not established *Page 712 
that it is entitled to a preliminary injunction.
When a surety satisfies the principal's obligation, it is entitled to reimbursement or restitution from the principal:
 "Principal-surety relationships are similar to master-servant or principal agent relationships because in both cases a principal, master, or one acting as surety may recover from his agent, servant, or principal, respectively, once the underlying liability or obligation is paid. . . . This right of indemnity is usually founded on an implied right or legal duty."
Alabama Kraft Co. v. Southeast Alabama Gas Dist.,569 So.2d 697, 700 (Ala. 1990). Alabama law thus recognizes Webb-Stiles's right to recover from Transact to the extent that it must satisfy Transact's obligation.[7]
Webb-Stiles's duty to reimburse SouthTrust arises solely out of Webb-Stiles's position as surety for Transact. If Webb-Stiles must pay that obligation, it has the remedy against Transact that it accepted when it became Transact's surety. This remedy is not subject to the choice-of-law and forum-selection clauses in the contract. Webb-Stiles can sue Transact in an American court to recover any money it must pay on Transact's behalf.
Like the plaintiff in Southern Energy, Webb-Stiles has failed to show that it lacks an adequate remedy at law. Because this fact is dispositive, the Court does not need to address whether Webb-Stiles met its burden of proving fraud in the transaction.
 IV. Conclusion
Webb-Stiles can sue Transact for damages for any loss it suffers as a result of its obligation to reimburse SouthTrust. The trial court therefore exceeded its discretion by enjoining payment of the letter of credit.[8]
The order of the trial court is reversed, and the case is remanded with instructions to dissolve the preliminary injunction.
REVERSED AND REMANDED WITH INSTRUCTIONS.
SEE, HARWOOD, STUART, and BOLIN, JJ., concur.
[1] This type of arrangement is typical of international standby-letter-of-credit transactions. Southern Energy Homes,Inc. v. AmSouth Bank of Alabama, 709 So.2d 1180, 1185 (Ala. 1998).
[2] A letter of credit is a financing arrangement in which the issuing bank, at the request of an applicant, agrees to honor demands for payment by the beneficiary of the credit, provided the terms and conditions of the letter of credit are met. The standby letter of credit is used to guarantee performance of the applicant's obligation to the beneficiary. The issuing bank promises that if the applicant defaults on that obligation, the issuing bank will pay the beneficiary an amount of money secured by the letter of credit. In order to obtain payment, the beneficiary must notify the issuing bank, in the manner agreed upon in the letter of credit, of its intent to draw upon the credit. Southern Energy Homes, 709 So.2d at 1184-85; see also
Ala. Code 1975, § 7-5-102(10).
[3] Although the letter of credit uses the term "guarantor," Webb-Stiles is actually a surety. A surety is jointly and severally liable with the principal on the underlying obligation.National American Ins. Co. v. Boh Bros. Constr. Co.,700 So.2d 1363, 1366 (Ala. 1997). When distinguishing between contracts of suretyship and guaranty, this Court looks to the substance of the obligation, not to the terms used by the parties. See Gambill v.Fox Typewriter Co., 190 Ala. 36, 66 So. 655 (1914).
[4] The dispute between Transact and AAI was unrelated to Webb-Stiles's performance as a subcontractor.
[5] AAI was named as a defendant in the underlying action. It did not appear in the trial court, instead submitting the written statement, in which it denied both that it was subject to personal jurisdiction in the trial court and that it was liable to Webb-Stiles. AAI is a not a party to this appeal.
[6] The importance of avoiding inquiry into the underlying contract creates a heavy burden for the party seeking to invoke the fraud exception in a letter-of-credit arrangement. "The `fraud in the transaction' exception is available only where the beneficiary's conduct has `so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served.'" Itek v. First Nat'l Bankof Boston, 730 F.2d 19, 25 (1st Cir. 1984) (quoting RomanCeramics Corp. v. Peoples Nat'l Bank, 714 F.2d 1207, 1212 n. 12 (3d Cir. 1983)).
[7] See also Restatement (Third) of Suretyship and Guaranty § 22 (1996) ("[W]hen the principal obligor is charged with notice of the secondary obligation it is the duty of the principal obligor to reimburse the secondary obligor to the extent that the secondary obligor . . . performs the secondary obligation. . . .").
[8] Because this factor is dispositive, the Court need not consider SouthTrust's other arguments, including 1) the availability of a remedy under Indian law, 2) the effect on this transaction of the Uniform Customs and Practice for Documentary Credits, 3) whether AAI's alleged fraud falls within the scope of § 7-5-109(b), 4) whether the common law provides a separate cause of action for relief in non-UCC letter-of-credit cases, and 5) whether Webb-Stiles contractually waived its right to injunctive relief.