MOORE, Judge.
Selma Air Center, Inc. (“SAC”), appeals from a preliminary injunction requiring it to vacate the premises operated by Craig *1141 Field Airport and Industrial Authority (“Craig Field”). We reverse the judgment.
For purposes of this appeal, the following material facts are not disputed. On May 1, 2013, Craig Field leased a “fixed based operation” to SAC.[1] The lease provides, in pertinent part:
“Said lease shall be for a period from 1st day of May, 2013, to the 31st day of December, 2025. However, either party has the option to terminate this lease (with or without cause) upon ninety (90) days written notice.”
On September 28, 2015, Craig Field hand-delivered to SAC a notice of its intent to terminate the lease within 90 days. At the end of that period, SAC had not vacated the premises, so Craig Field filed an application for a preliminary injunction to require SAC to vacate the premises. After a hearing, the Dallas Circuit Court (“the trial court”) entered the requested preliminary injunction on January 5, 2016, ordering SAC to vacate the premises and restraining SAC from occupying the premises after January 12, 2016. SAC timely appealed.
SAC argues on appeal that the trial court erred in entering the preliminary injunction in favor of Craig Field. The Alabama Supreme Court has outlined our standard of review with regard to an appeal of an order granting a preliminary injunction as follows:
“ ‘The decision to grant or to deny a preliminary injunction is within the trial court’s sound discretion. In reviewing an order granting a preliminary injunction, the Court determines whether the trial court exceeded that discretion.’ SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So.2d 706, 709 (Ala.2005).
“A preliminary injunction should be issued only when the party seeking an injunction demonstrates:
“ ‘ “(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the [party] has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction].” ’
“Ormco Corp. v. Johns, 869 So.2d 1109, 1113 (Ala.2003)(quoting Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala.1994)).
“To the extent that the trial court’s issuance of a preliminary injunction is grounded only in questions of law based on undisputed facts, our longstanding rule that we review an injunction solely to determine whether the trial court exceeded its discretion should not apply. We find the rule applied by the United States Supreme Court in similar situations to be persuasive: ‘We review the District Court’s legal rulings de novo and its ultimate decision to issue the preliminary injunction for abuse of discretion.’ Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006)....”
Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1175-76 (Ala.2008).
In this case, SAC occupies a portion of the Craig Field premises pursuant *1142 to a lease which, according to its terms, may be terminated upon 90 days’ written notice, with or without cause. Craig Field hand-delivered notice of its intent to terminate the lease in 90 days. Although SAC claimed at trial that the method of delivery was invalid, SAC waives that argument on appeal. Thus, SAC acknowledges that Craig Field likely would prevail on any claim that the leasehold has expired, terminating SAC’s right to occupy the premises. SAC argues, however, that Craig Field did not meet the other requirements for a preliminary injunction. We agree.
The prevailing rule throughout this country holds that “[a] bill in equity, such as for an injunction, ordinarily is not available to the landlord for the recovery of possession of the premises except where there is no adequate remedy at law and the landlord is threatened with a permanent and continuing injury.” 52B C.J.S Landlord and Tenant § 1500 (2012) (footnotes omitted). Alabama law provides various legal remedies pursuant to which a commercial landlord may regain possession of premises wrongfully withheld by a holdover tenant, such as through a common-law action of ejectment, see Jackson v. Davis, 153 So.3d 820 (Ala.Civ.App.2014), a statutory action of ejectment, see Ala. Code 1975, § 6-6-280(b), or an unlawful-detainer proceeding, see Ala.Code 1975, § 6-6-310 et seq. At trial, Craig Field did not present any evidence indicating that those legal remedies would not be adequate or that it was being threatened with a permanent and continuing injury.
The executive director of Craig Field testified that some of its customers had expressed dissatisfaction with SAC’s services, that SAC may have violated state law regarding its fueling operations, and that, at one point, it had appeared that SAC contemplated using the premises in a manner outside the scope of the lease. None of that testimony establishes irreparable injury to Craig Field that cannot be adequately redressed through legal remedies. The executive director of Craig Field also testified as follows:
“[Counsel for Craig Field]: And what role does the fixed-base operator play?
“[Executive director]: Well, I always like to think that that’s kind of the front door to Selma and Dallas County. A lot of people, that’s the first thing they see when they get out. We have people that fly in to several of the industries here.
[[Image here]]
“Anyway. We continually are in a recruiting process for—and competing with other communities for economic development projects. In my opinion, that’s why we need a reliable [fixed-base operation]. Somebody is not going to call and the phone’s not going to be turned off. They go in there, the power is not going to be turned off. They come in and they would have sufficient fuel to refuel the aircraft when they fly in. And those type things could cost us economic projects that we are working on now, some that we will be working on, and projects that we don’t even know exist yet. They could come in and see a mess like that and turn around and leave and we would never know they came to Dallas County.”
That speculative testimony does not establish the probability of permanent, irreparable injury to Craig Field, even if we could consider the potential economic impact to Dallas County in general.[2]
*1143 On appeal, Craig Field asserts that, in order to obtain a writ of possession through an ejectment action or an unlawful-detainer action, it would have to await adjudication and possible appeal of its claims. However, Craig Field fails to explain how it will be irreparably damaged in the meantime. The possibility that, during litigation, some as yet unidentified industrial representative may be so outraged by the fixed-base-operation performance of SAC that it will reject Dallas County as an investment opportunity on that basis alone does not suffice.
Craig Field failed to prove that it had no adequate remedy at law or that it would suffer irreparable injury absent the granting of the injunction. We conclude, therefore, that the trial court erred in granting Craig Field’s application for a preliminary injunction. Accordingly, the trial court’s judgment is reversed and the case is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. "A fixed base operation is a commercial facility that offers a variety of services primarily to pilots and passengers of general aviation aircraft.” Epps Aircraft, Inc. v. Montgomery Airport Auth., 570 So.2d 625, 626 n. 1 (Ala.1990).

. We take judicial notice that the executive director of Craig Field acts as an ex officio board member of the Selma and Dallas County Economic Development Authority. See Ala.Code 1975, § 45-24-90(b)(3).