Rel: February 24, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

_____

### SC-2022-0787

_____

### Orlando Bethel

### v.

### Brennan James Franklin, Mikki Franklin, and Hughes Funeral Home and Crematory

### Appeal from Baldwin Circuit Court
### (CV-22-900287)

SELLERS, Justice.

Orlando Bethel appeals from an order of the Baldwin Circuit Court denying his motion for a preliminary injunction pursuant to Rule 65, Ala. R. Civ. P. We reverse and remand.

## I. Facts and Procedural History

On February 18, 2022, Zoe Sozo Bethel ("the decedent") died intestate in Florida; she was survived by her spouse, Brennan James Franklin ("the spouse"), and their five-year-old daughter. After the decedent's death, the spouse arranged for the body to be cremated in Florida and had the cremated remains ("the ashes") shipped to Hughes Funeral Home and Crematory ("the funeral home") in Alabama, where the spouse's mother, Mikki Franklin, was employed. Thereafter, a dispute arose between the spouse and the decedent's father, Orlando Bethel ("the father"), concerning the right to control the disposition of the ashes.

On March 8, 2022, the father filed an emergency petition, pursuant to § 34-13-11(b)(4), Ala. Code 1975, in the Baldwin Probate Court seeking a determination that the spouse and the decedent had been estranged at the time of the decedent's death and that the spouse had therefore forfeited his right as an "authorizing agent" to control the disposition of

2

ashes. The father requested that he, rather than the spouse, be granted the right to control the disposition of the ashes. While the probate action was pending, the father filed in the Baldwin Circuit Court a motion for a temporary restraining order or, alternatively, for a preliminary injunction enjoining the spouse, the spouse's mother, and the funeral home ("the defendants") from further "dividing, diminishing, splitting up or otherwise disposing of" the ashes; the proceeding on the father's request for injunctive relief was assigned case no. CV-22-900248. The circuit court entered a five-day temporary restraining order enjoining the defendants from disposing of the ashes and scheduling a preliminary hearing on the matter. Thereafter, the funeral home, through its owner, Benjamin Hughes, Sr., filed a motion requesting that the funeral home be dismissed from the action; in that motion, Hughes represented, in relevant part, that he understood that the funeral home could not "take any action [with regard to the ashes] until the pending Probate Court action is completed through all of the Court's deliberation and any subsequent appeals thereto that could possibly follow." Based on that representation, the father voluntarily moved the circuit court to dismiss his motion for injunctive relief. Accordingly, the circuit court entered an

3

order dismissing the father's request for injunctive relief filed in case no. CV-22-900248.

On March 16, 2022, the probate court entered a final order in the probate action, dismissing the father's petition filed pursuant to § 34-13-11(b)(4) as moot. The probate court opined that the purpose of § 34-13-11 is "to give direction and/or protection to a funeral home director as to who has the legal authority to determine the manner in which the remains of a deceased person may be disposed, i.e., buried or cremated." The probate court reasoned that, because the decedent's remains had been disposed of by cremation, the father's request to be awarded the right to control the disposition of the remains was moot. Accordingly, the probate court did not address the father's allegation that the spouse and the decedent had been estranged at the time of the decedent's death.

On March 23, 2022, the father appealed the probate court's order to the circuit court ("the probate appeal"). That appeal is presently pending in the circuit court and is not currently before us. In that same action, the father filed another motion for a preliminary injunction, the denial of

4

which is the subject of this appeal.[1] In support of his requested injunctive relief, the father averred, among other things, that the funeral home had possession of the ashes and that the spouse had communicated to the father his intent to "split up" or otherwise dispose of the ashes, which, the father claimed, would not only "violate the decedent's wishes and her religious beliefs," but would also constitute a desecration of her ashes. The father also alleged that Hughes, the owner of the funeral home, had informed him that the ashes had already been "split up," despite Hughes's previous representation that the funeral home could take no action regarding the ashes pending resolution of the issue regarding the right of disposition. Accordingly, the father requested that the circuit court enter a preliminary injunction enjoining the defendants from

---

[1]On appeal, the defendants unpersuasively argue that the doctrine of res judicata barred the father's second request for injunctive relief. There are four elements of res judicata, all of which must be present for the doctrine to apply: (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) involving substantial identity of parties, and (4) involving the same cause of action in both actions. See Benetton S.p.A. v. Benedot, Inc., 642 So. 2d 394, 399 (Ala. 1994). In this case, the defendants have not demonstrated that the order granting the father's motion to voluntarily dismiss case no. CV-22-900248, in which the father had requested injunctive relief, constituted a judgment on the merits. See generally Rule 41, Ala. R. Civ. P. (regarding dismissal of actions).

further "dividing, diminishing, splitting up or otherwise disposing of" the ashes.

On June 3, 2022, the circuit court held a hearing on the father's request for a preliminary injunction, at which the father proceeded pro se. Although the father elicited substantial testimony on the issue of whether the spouse and the decedent had been estranged, we do not find that testimony entirely relevant or dispositive of the issues in this appeal. Nonetheless, the undisputed testimony at the hearing indicated that the decedent and the spouse had been living apart since the end of 2020 but that they were still legally married when the decedent died in February 2022. The spouse testified that, after the decedent died, he had her body cremated and that he wanted to keep the ashes for their minor daughter. Despite having knowledge of the ongoing dispute regarding the right to control the disposition of the ashes, the spouse testified that he had directed the funeral home to divide or split the ashes; however, he could not remember the date he had done so. The spouse further stated that, on April 9, 2022, he relinquished possession of the "divided" ashes to "third parties." Notably, the spouse refused to disclose the names of those individuals, stating that he was "not at liberty to discuss [their identity]

under advice of counsel." A discussion then ensued off the record, after which the circuit-court judge stated, "I'm going to order someone to file under seal to me who's got [the ashes]," to which the spouse's attorney stated, "I will be happy to file that under seal." The circuit-court judge then stated, "I know you will because I'm ordering it, and then we'll decide who gets [the ashes] at that point." Finally, near the conclusion of the hearing, the father indicated his intent to testify, to which the circuit-court judge replied, "[y]ou can certainly testify if you want to. I can tell you that I'm inclined to grant the temporary [injunction] and order all of the defendants to -- if they have possession of any of the [ashes] not to dispose of them. … And it's just going to be temporary until we get to the final hearing." Accordingly, the father did not testify. Despite the circuit-court judge's representation that he planned to order the defendants to file under the seal the names of the individuals who had possession of the ashes and despite his representation that he was "inclined" to issue the preliminary injunction pending a final hearing on the merits, the circuit court, nonetheless, entered an order denying the father's requested injunctive relief, without any stated reasons or

7

explanation. The father filed a motion to reconsider, which the circuit court denied. This appeal followed. See Rule 4(a)(1)(A), Ala. R. App. P.

## II. Standard of Review

A party seeking a preliminary injunction must demonstrate (1) that the party would suffer irreparable harm without the injunction, (2) that the party has no adequate remedy at law, (3) that the party has at least a reasonable chance of success on the ultimate merits of the case, and (4) that the hardship that the injunction will impose on the opposing party will not unreasonably outweigh the benefit accruing to the party seeking the injunction. Holiday Isle, LLC v. Adkins, 12 So. 3d 1173, 1176 (Ala. 2008). Generally, "'[t]he decision to grant or to deny a preliminary injunction is within the trial court's sound discretion. In reviewing an order granting [or denying] a preliminary injunction, the Court determines whether the trial court exceeded that discretion.'" Holiday Isle, 12 So. 3d at 1175-76 (quoting SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So. 2d 706, 709 (Ala. 2005)). We review the legal rulings of the trial court, to the extent they resolve questions of law based on undisputed facts, de novo. Id. at 1176.

## III. Discussion

The dispositive issue on appeal is whether the circuit court exceeded its discretion in denying the father's request for a preliminary injunction pending a final hearing on the merits of the probate appeal.

### A.  Reasonable Chance of Success on the Ultimate Merits

Chief among the factors to be considered in issuing a preliminary injunction is the demonstration of a reasonable probability of success on the merits. The father argues that he sufficiently demonstrated entitlement to a preliminary injunction based on the plain language of § 34-13-11(b)(4), regarding estrangement; the testimony adduced at the preliminary-injunction hearing regarding the spouse and the decedent's estrangement; and his allegation that the probate court erred in determining, as a matter of law, that cremation alone constitutes "disposition" and, thus, dismissing his petition filed in that court as moot. The defendants, on the other hand, argue that the father lacked "standing" under § 34-13-11 to commence the probate-court action because, they say, that statute provides that a surviving spouse has priority status over a surviving parent to control the disposition of a decedent's remains. Our resolution of whether the father has demonstrated a reasonable probability of success on the ultimate merits

9

hinges on the statutory interpretation of § 34-13-11. In this opinion, for the purpose of providing guidance to the probate court and the circuit court, this Court interprets § 34-13-11, specifically those sections of the statute relevant to the facts presented in this appeal.[2]

Section 34-13-11(a) begins by recognizing that any person "who is at least 18 years of age and of sound mind may enter into a contract to act as authorizing agent and direct the location, manner, and conditions of disposition of deceased human remains and arrange for funeral and

_____

[2]In McRae v. Booth, 938 So. 2d 432, 433 (Ala. Civ. App. 2006), the Court of Civil Appeals was presented with an argument regarding § 34-13-11. At the time McRae was decided, the version of the statute then in effect contained only a priority structure for determining who possessed the right to be an authorizing agent permitted to order cremation or final disposition of the remains of a decedent, which is presently contained in subsection (a). See Act No. 2002-239, 503 (§ 34-13-1(a)(5) and § 34-13-123), Ala. Acts 2002. In 2011, the statute was essentially rewritten to amend what is now subsection (a) to permit an authorizing agent to direct "the location, manner, and conditions of disposition of remains and arrange for funeral goods and services" and to add subsections (b), (c), (d), and (e). See Act No. 2011-623, Ala. Acts 2011. Accordingly, in McRae, the Court of Civil Appeals correctly stated that "'Alabama does not have a statute addressing the custody of the remains of deceased persons.'" McRae, 938 So. 2d at 433 (quoting Cottingham v. McKee, 821 So. 2d 169, 171 (Ala. 2001) (emphasis added)). Following the 2011 amendment to the statute, that is no longer the case.

burial goods and services to be provided upon death."[3]   Id.   Subsection

(a) then continues:

> "Except as otherwise provided in subsection (b), the right to control the disposition of the remains of a deceased person as an authorizing agent, including the location, manner, and conditions of disposition and arrangements for funeral and burial goods and services to be provided, shall vest in the following persons in the priority listed and the order named, provided the person is at least 18 years of age and of sound mind:
>
> > "(1)  The person designated by the decedent as authorized to direct disposition pursuant to Public Law No. 109-163, Section 564, … if the decedent died while serving on active duty in any branch of the United States Armed Forces, United States Reserve Forces, or National Guard.
> >
> > "(2)a.  The person designated by the decedent in an affidavit executed in accordance with paragraph b.
> >
> > "b. …
> >
> > "(3) The surviving spouse.
> >
> > "(4) The sole surviving child [or children] of the decedent ….

---

[3]Section 34-13-11 was amended effective May 1, 2022, after the proceedings leading to the probate appeal were initiated.  Because the parties, in their briefs, have relied upon the current version of the statute, and because the changes effected by the amendment were relatively minor, we quote from the current version of the statute.

"(5) The sole surviving grandchild [or grandchildren] of the decedent ….

"(6) The surviving parent or parents of the decedent. …

" …."[4]

(Emphasis added.)

Relevant to the facts here, under subsection (a), a decedent's "surviving spouse" has priority status over a "surviving parent" of a decedent with regard to the right of disposition. It is undisputed that the decedent died without a written directive regarding the disposition of her remains; thus, except as otherwise provided in subsection (b), the spouse, rather than the father, was entitled to the right to control the disposition of the decedent's remains, "including the location, manner, and conditions of disposition and arrangements for funeral and burial goods and services to be provided."[5] § 34-13-11(a).

---

[4]The statute lists in priority 13 classes of persons entitled to the right of disposition.

[5]Contrary to the probate court's findings, the plain language of § 34-13-11 does not restrict "disposition of the remains" to deciding merely whether the remains should be buried or cremated. The plain wording of the statute also provides that the right to control the disposition of remains would also include the right to control "arrangements for funeral

12

But, § 34-13-11(b) sets forth the following five circumstances in which the right of disposition "shall be forfeited and passed to the next qualifying person listed in subsection (a)":

"(1) [When the] person is charged with murder or manslaughter in connection with the death of the decedent and the charges are known by the mortician. If the charges against the person are dismissed or the person is acquitted of the charges, the right of disposition shall be reinstated.

"(2) [When the] person does not exercise his or her right of disposition within two days after notification of the death of the decedent or within three days after the death of the decedent, whichever is earlier.

"(3) If the person is the spouse of the decedent and a petition to dissolve the marriage was pending at the time of death of the decedent.

"(4) If the judge of probate court determines, <u>pursuant to subsection (c)</u>, that the person entitled to the right of disposition and the decedent were estranged at the time of death. For the purposes of this subdivision, <u>estranged means a physical and emotional separation that has existed for such a period of time that an absence of affection, trust, and regard for the decedent is clearly demonstrated</u>."

(Emphasis added.)

Subsection (b)(4) contemplates that the probate court will employ a fact-finding analysis regarding whether there was an estrangement, i.e.,

---

and burial goods and services to be provided." § 34-13-11(a); see also § 34-13-1(22), Ala. Code 1975 (defining "funeral arrangements").

whether there was "a physical and emotional separation." Because the probate court erroneously determined that cremation of the remains rendered the father's requested relief moot, it never engaged in a fact-finding analysis regarding whether the decedent and the spouse were estranged at the time of the decedent's death.

Section 34-13-11(c) provides:

"[1.] Notwithstanding subsections (a) and (b), the judge of probate of the county of residence of the decedent may award the right of disposition to the person the judge of probate determines to be the most fit and appropriate to manage the right of disposition, and may make decisions regarding the remains of the decedent if the persons possessing the right of disposition do not agree. [2.] If two or more persons who possess an equal right of disposition are not able by majority vote to agree upon the disposition of the remains of the decedent, any of those persons or the funeral establishment with custody of the remains may file a petition asking the judge of probate to make a determination in the matter. In making such a determination, the judge of probate shall consider all of the following:

"(1) The reasonableness and practicality of the proposed funeral and disposition arrangements.

"(2) The degree of the personal relationship between the decedent and each person possessing a right of disposition.

"(3) The financial ability and willingness of each person possessing a right of disposition to pay

14

the cost of the funeral and disposition arrangements.

"(4) The convenience and needs of other family members and friends who wish to pay their respects and the degree to which the funeral arrangements would allow maximum participation by all who wish to pay their respects.

"(5) The desires of the decedent."

Subsection (c) clearly empowers the probate court to resolve disputes and to make decisions regarding the right of disposition. The first sentence of subsection (c) contemplates that, notwithstanding the priority structure set forth in subsection (a), and notwithstanding the circumstances constituting forfeiture listed in subsection (b), the probate court may still award the right of disposition to "the person" the probate court determines "to be the most fit and appropriate to manage the right of disposition ...." Applying the statute to the facts, if the spouse was entitled to control the right of disposition under subsection (a), but he forfeited that right under subsection (b) based on a probate court's finding of estrangement, the probate court could still determine, pursuant to subsection (c), that the spouse would be the "most fit and appropriate" person to manage the right of disposition. In summary, the first sentence of subsection (c) contemplates that a person with a lower priority status

15

under subsection (a) may challenge another person's priority status under the statute; therefore, in this case, the father was permitted to challenge the spouse's priority status based on an allegation of estrangement.

In comparison, the second sentence of subsection (c) relates solely to disputes between persons possessing an "equal" right of disposition, such as siblings or parents. That sentence states that, if two or more persons possessing an equal right of disposition are not able to agree upon the right of disposition, "any of those persons or the funeral establishment with custody of the remains may file a petition asking the judge of probate to make a determination in the matter." Immediately thereafter, subsection (c) provides that, "[i]n making such a determination, the judge … shall consider" the five factors listed. Subsection (c), then, clearly requires a specific analysis by the probate court in deciding disputes among persons possessing an equal right of disposition.

Notably absent from subsection (c) is any language authorizing persons who do not possess an equal right of disposition, such as the father and the spouse in this case, to file a petition in the probate court

16

seeking a determination regarding the right of disposition. However, nothing in the statute expressly precludes persons not possessing an equal right of disposition from filing such a petition. The fact that the statute contemplates that a probate court may determine that the person entitled to the right of disposition and the decedent were estranged at the time of the decedent's death implies that a petition seeking such a determination is permitted. The legislature has dictated that we should liberally construe the statute. See § 34-13-2, Ala. Code 1975 (noting that Chapter 13 of Title 34 "shall be construed liberally and in a manner to carry out its obvious intents and purposes").[6] Thus, contrary to the defendants' argument, the father had the capacity to petition the probate court for a determination on the issue of estrangement.

In summary, subsection (a) lists in priority those persons legally authorized to control the disposition of a decedent's remains, subsection (b) lists specific circumstances in which a person entitled to the right of disposition forfeits that right to the next qualifying person listed in

---

[6]Section 34-13-2 was amended effective May 1, 2022, after the proceedings leading to the probate appeal were initiated. Before that amendment, the statute provided, in relevant part, that "all the provisions of [Chapter 13 of Title 34] shall be construed liberally and in a manner to carry out its obvious intents and purposes."

subsection (a), and subsection (c) empowers a probate court to resolve disputes regarding the right of disposition.[7] Based on the foregoing, we agree with the father that the plain language of § 34-13-11(b)(4), coupled with the evidence presented at the preliminary-injunction hearing, demonstrated that the father has a reasonable chance of success on the ultimate merits of the probate appeal.

B.  Irreparable Harm for Which There is No Adequate Remedy at Law

The father asserts that he demonstrated a level of irreparable harm that would support injunctive relief because, he says, if the defendants destroy the ashes, he will have no adequate remedy at law.  We agree that the father has met his burden of demonstrating irreparable harm for which there is no adequate remedy at law.  In Water Works & Sewer Board of Birmingham v. Inland Lake Investments, LLC, 31 So. 3d 686, 692 (Ala. 2009), this Court stated that

> "'"[i]rreparable injury" is an injury that is not redressable in a court of law through an award of money damages.' Perley v. Tapscan, Inc., 646 So. 2d 585, 587 (Ala. 1994). The Court has likewise stated that '[a] plaintiff that can recover damages has an adequate remedy at law and is not entitled to an injunction.' SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So. 2d 706, 709 (Ala. 2005). Thus, 'a conclusion that

---

[7]Although § 34-13-11 also contains subsections (d) and (e), those subsections are irrelevant to the facts presented in this appeal.

the injury is irreparable necessarily shows that there is no adequate remedy at law.' <u>Fleet Wholesale Supply Co. v. Remington Arms Co.</u>, 846 F.2d 1095, 1098 (7th Cir. 1988)."

(Footnote omitted.)

The defendants do not dispute that the father would have an inadequate remedy at law should the injunction not issue. Rather, the defendants argue that, because the evidence confirms that none of the defendants had possession of the ashes at the time of the preliminary-injunction hearing, the relief sought by the father could not be compelled. In other words, the defendants contend that, because they voluntarily ceased the challenged conduct in this case, appellate review is moot. For the reasons discussed below, we disagree.

In <u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 91 (2013), the United States Supreme Court elaborated on the voluntary-cessation doctrine, explaining:

"We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 283, 289 (1982). Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly

19

wrongful behavior could not reasonably be expected to recur.' <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u>, 528 U.S. 167, 190 (2000)."

See also <u>City News & Novelty, Inc. v. City of Waukesha,</u> 531 U.S. 278, 284 n.1 (2001) (noting that the voluntary-cessation doctrine "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior"); see also <u>Knox v. Service Emps. Int'l Union, Local 1000</u>, 567 U.S. 298, 307 (2012) (noting that the voluntary cessation of challenged conduct "must be viewed with a critical eye").

The challenged conduct here is the spouse's relinquishing possession of the ashes during an ongoing dispute concerning who has the right to control the disposition of the ashes under § 34-13-11. During the preliminary-injunction hearing, the spouse offered no evidence as to why he had relinquished possession of the ashes to nonparties, and he provided no evidence indicating that he did not intend to regain possession of the ashes. In fact, it appears more likely than not that the spouse will at some point regain possession of the ashes based on his testimony that he wanted the ashes for his minor daughter. More critically, this lack of evidence calls into question the spouse's motivation

in relinquishing possession of the ashes before the scheduled preliminary-injunction hearing and while the probate appeal concerning competing claims to the right to control the disposition of the ashes is still pending. Under these circumstances, we conclude that the spouse's relinquishing possession of the ashes creates a presumption of his intent to evade not only the circuit court's injunctive power over the defendants or the ashes, but also this Court's appellate review. Accordingly, the defendants have not demonstrated that the father's request for injunctive relief was moot under the voluntary-cessation doctrine. See Ellis v. Brotherhood of Ry., Airline, and Steamship Clerks, 466 U.S. 435, 442 (1984) ("[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.").

### C. Whether the Hardships to the Defendants Unreasonably Outweigh the Benefits to the Father

Finally, the father argues that any harm imposed on the defendants as a result of the issuance of a preliminary injunction would clearly be outweighed by the benefit accruing to him. We agree. The father asserts that the issuance of the injunction would simply maintain the status quo by requiring the defendants to take no further action regarding the ashes pending a final hearing on the merits of the probate appeal. See Irwin v.

21

Jefferson Cnty. Pers. Bd., 263 So. 3d 698, 702-03 (Ala. 2018) (noting that the purpose of a preliminary injunction "is to maintain the status quo pending the resolution of the action on its merits"). The father points out that, despite having knowledge of the pending litigation over the right of disposition, the funeral home, at the spouse's direction, divided the ashes and that the spouse thereafter relinquished possession of the ashes to "third parties" on his own initiative, seemingly in an attempt to defeat the interest of the father and to avoid any accountability for his actions. The father also asserts that the benefit flowing from the issuance of a preliminary injunction pending a final hearing on the merits of the probate appeal will ensure that he will be able to "lay his decedent's cremains in a final resting place according to her wishes." Finally, the father reasserts that, in the event the defendants dispose of the ashes, he will suffer irreparable damage for which there is no adequate remedy at law. Thus, the father argues that he does not have any other means by which to maintain the integrity of the ashes pending a final hearing on the merits of the probate appeal. Notably, the defendants do not dispute the father's argument that they would not suffer any hardship if a preliminary injunction issued pending a final hearing on the merits of

the probate appeal. Accordingly, the father has demonstrated that any harm imposed on the defendants by the issuance of a preliminary injunction would not unreasonably outweigh the benefit accruing to him.

### IV. Conclusion

Based on the foregoing, we conclude that the circuit court exceeded its discretion in denying the father's motion for a preliminary injunction pending a final hearing on the merits of the probate appeal. Accordingly, the order of the circuit court denying the father's motion for a preliminary injunction is reversed, and the cause is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Wise, Mendheim, Stewart, Mitchell, and Cook, JJ., concur.

Parker, C.J., concurs in part and concurs in the result, with opinion.

Shaw and Bryan, JJ., concur in the result.

PARKER, Chief Justice (concurring in part and concurring in the result).

I agree that the decedent's father's request for a preliminary injunction is not moot, but for reasons different from those in the main opinion. I do not believe that the voluntary-cessation doctrine is relevant here. That doctrine is relevant when a litigant has voluntarily complied with the relief sought by the opposing party. See, e.g., City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982); Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189-90 (2000). Here, the father sought the relief of an order prohibiting the defendants (and anyone acting in concert with them) from handling or disposing of -- or allowing or facilitating anyone else to handle or dispose of -- the decedent's ashes during the pendency of the appeal of the probate court's order. In effect, the father sought to maintain the status quo during that appeal. The defendants do not argue that they have voluntarily complied with that requested relief. Instead, they argue that they have already done what the father sought to prohibit -- i.e., that they have already altered the status quo -- by the funeral home's transferring the ashes to the decedent's spouse and the spouse's transferring the ashes to nonparties. That type of conduct is the opposite of voluntary cessation.

24

Cf. Mead v. Eagerton, 255 Ala. 66, 72, 50 So. 2d 253, 257 (1951) ("In our case, instead of abandoning the matter sought to be enjoined, the respondents proceeded to do it.").

I believe that the father's requested relief is not moot because that relief is still within the circuit court's power. When an injunction request concerns the disposition of property or objects, the court's power is not limited to prohibiting parties to the case from altering or transferring the property or objects. The injunction power extends well beyond that: The court may command parties to regain possession, see Mead, 255 Ala. at 70-72, 50 So. 2d at 256-58; Paris v. United States Dep't of Hous. & Urb. Dev., 713 F.2d 1341, 1344-45 (7th Cir. 1983), and may even control the conduct of nonparties who are sufficiently connected to the case, see Rule 65(d), Ala. R. Civ. P.; Ex parte Richardson, 380 So. 2d 831 (Ala. 1980). Thus, even after the defendants transferred the ashes, the father's requested relief of directing the defendants and connected persons to maintain the status quo of the ashes -- whatever that status quo currently is -- was within the circuit court's power. Moreover, the defendants' intent and motives in transferring the ashes are not relevant to the question of mootness. The sole issue is whether their transfers of

the ashes (for whatever reasons, good or bad) were sufficient to moot the father's requested relief. For the above reasons, they were not.

In addition, I agree with the main opinion's conclusion that the elements for obtaining a preliminary injunction were satisfied and with the opinion's analysis of the disposition-of-remains statute, § 34-13-11, Ala. Code 1975. However, the opinion intermixes its analysis of three of the elements for obtaining a preliminary injunction -- irreparable injury, no adequate remedy at law, and balancing of hardships and benefits. I believe that those elements are conceptually separate. See State ex rel. Marshall v. TY Green's Massage Therapy, Inc., 332 So. 3d 413, 427-30 (Ala. 2021) (Parker, C.J., concurring in the result).